# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

HODGSON V. PERKINS ET ALS.

° APRIL 5th, 1888.

Absent, Richardson, J.

MINING PRIVILEGES—*License—Assignment.*—An indenture between land owner and certain skilled miners, giving them the privilege of digging for gold, &c., on the former's land and to hold the same for such purpose, and none other, so long as they may deem it worth while to search for gold, &c., creates no easement on the said land, but only an unassignable lease. *Barksdale* v. *Hairston*, 81 Va., 764.

Appeal from decree of circuit court of Fluvanna county, entered April 14th, 1887, dismissing the petition filed by William B. Hodgson, trustee, in the suit pending in said court under the style of Perkins' executor and others against Bowles and others. Said Hodgson obtained an appeal and *supersedeas* to this court.   Opinion states the case.

*J. J. A. Powell*, for the appellant.

*W. B. Pettit* and *A. A. Gray*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The facts material to be stated appear from a transcript of so much of the record in said suit as is necessary to a determination of the matters of error assigned in the petition for this appeal.

D. W. K. Bowles was the owner and occupier of a large farm in the counties of Fluvanna and Goochland, upon which he believed, as it was generally believed, that there were valuable *minerals*. He was not, however, a miner, but simply a practical farmer. He desired that his said land should be explored and worked for such minerals; he, therefore, on the 7th day of August, 1834, entered into an agreement with skilled miners, as follows: "This indenture, made the 7th day of August, 1834, between D. W. K. Bowles, of the one part, and George Fisher, Sr., George Fisher, Jr., James Fisher, Dunlop Fisher, and Buford Kirtley, of the other part; witnesseth: That the said D. W. K. Bowles, for and in consideration of the sum of one dollar to him paid in hand, the receipt whereof is hereby acknowledged, hath bargained and sold, and by these presents doth bargain and sell, unto the said Fishers, &c., the *privilege* of digging and working for gold, or other minerals, and using any timber or water power anywhere on a tract of land lying in the counties of Fluvanna and Goochland, and State of Virginia, adjoining the lands of S. P. Hughes, R. J. Brooks, and others, containing eight hundred acres, more or less, reserving to the said Bowles, his heirs, &c., the right to cultivate and use the said land in the same manner as though this *lease* had never been executed, provided he does not thereby molest or interfere with the said Fishers, &c., their heirs, &c., in searching and working for gold or other metals; and the said Fishers, &c., hereby agree and bind themselves, their heirs, &c., to pay unto the said Bowles one-fifth part of all the surface gold found on said land, and if the said Fishers, &c., should succeed in finding a vein of gold, or other metals, on said land, they hereby agree and bind themselves to test such vein to their satisfaction, at their own expense, and when tested, if found to be valuable, to give Bowles one-half of said vein by his, Bowles, paying one-half the expenses of working said vein; but it is distinctly understood that the said Bowles is to be at no expense, until the said vein is tested, further than

one-sixth part, which one-sixth part the said Bowles hereby reserves to himself, exclusive of the half of said vein or veins, as also one-sixth part of all surface gold found on said land; to have and to hold the said land, except as before excepted, unto the said Fishers, &c., their heirs, &c., so long as they may deem it worthy of searching and working for gold or other metals; and the said Fishers, &c., agree not to use said land for any other purpose than searching and working for gold, &c., and that they will not molest or disturb the said Bowles in farming upon said land, except so far as may be necessary for carrying on mining operations; and the said Bowles, Fisher, &c., each binds themselves, their heirs, &c., in the penalty of five thousand dollars, for the true performance of the above on each of their parts. In witness whereof the parties of these presents have set their hands and affixed their seals the day and date above written.

D. W. K. BOWLES,    [Seal.]

GEO. FISHER, SR.,    [Seal.]

DUNLOP FISHER,    [Seal.]

BUFORD KIRTLEY,    [Seal.]

GEORGE FISHER, Jr.,  [Seal.]

JAMES FISHER,    [Seal.]

On the 7th day of March, 1836, Buford Kirtley, one of the grantees in the deed from said Bowles, conveyed his interest, rights, and title, in and to "a certain *lease* made and entered into 7th day of August, 1834, between D. W. K. Bowles, George Fisher, Sr., George Fisher, Jr., James Fisher, Dunlap Fisher, and Buford Kirtley, * * * for the purpose of searching and working for gold and other metals," &c., &c., to Joseph Hodgson.

Shortly after the making of the lease on the 7th of August, 1834, between D. W. K. Bowles and the Fishers and Kirtley, they commenced exploring and operating upon the land of Bowles, (he being one of the company or partnership,) which they continued for some time, and then they quit their work and searching upon the place wholly and finally; when Bowles,

being disgusted and worn out about their abandonment of the undertaking stipulated for, repurchased and had conveyed back to him, by a deed dated 4th day of January, 1842, from the said Fishers, the interest or privilege which he had conveyed to them by the deed of 7th of August, 1834. Bowles, considering the agreement between him and the Fisher's and Kirtley to be wholly at an end, both by this re-transfer, and by their total abandonment of the operations of searching and working for gold and other metals, for many years went on persistently and at great expense, from 1842 to 1884, delving and working and sinking shafts, and making developments, in pursuit of his monomania, and his oft-repeated declaration, that "the way to sell a gold mine was to operate it."

But in all this forty years and more, during which Bowles was devoting most of his time and means—even his salary as county judge—to making these explorations and developments upon his land for gold and other minerals supposed to be there, singly and alone, Hodgson, from the day of the assignment made by Kirtley to him, March the 7th, 1836, down to the filing of the petition in 1885, never did any work, or made any searching and digging on the land, or took any part, or even possession, for any purpose, or ever contributed a cent, or took any notice or gave any attention to his asserted interest acquired nearly fifty years before, until the land is sold under the decree of the circuit court of Fluvanna in this creditors' suit in which the appellant filed his petition. Indeed, so completely had the whole thing been abandoned, that the said deed of assignment from Kirtley to Hodgson of March 7th, 1836, was never even put to record until May 22d, 1880; after which the appellant filed his petition setting up his claim to a participation in the proceeds of the sale of Bowles' land at the suit of his creditors. Upon the hearing of the cause, at the April term, 1887, the circuit court dismissed appellant's said petition; from which action of the court this appeal is taken.

The determination of this case, in this court, is ruled by

the decision in the case of *Barksdale* v. *Hairston*, 81 Va., 764, in which Lacy, J., in delivering the opinion of the court said : " The provision in the agreement of the 10th day of November, 1836, between John A. Hairston, Peter Hairston, and George Hairston, that the partnership should have and possess the exclusive use and privilege of digging, hauling off, and working any ore now found, or which may hereafter be found anywhere on the said John A. Hairston's land, was the grant of a mere license to the partnership to dig ore on the said premises, not coupled with any estate or interest in the said lands, and did not create any easement on the land. No acts having been done under the license, the same was an executory license; was revocable at the pleasure of the grantor, and so continued up to the dissolution of the partnership by the death of one of the partners. In 1842, the lands belonging to the partnership were sold and conveyed in a suit brought to wind up the partnership. The license, never exercised, was not assignable, and was revoked by the dissolution of the partnership, and does not attach to or affect the lands in the hands of John A. Hairston's heirs, or their vendee." See also the long list of cases cited as authorities by the learned judge above quoted.

The deed of August 7th, 1834, between Bowles of the one part, and the Fishers & Kirtley of the other part, was simply a lease to the said Fishers & Kirtley of the privilege of searching and digging and working for gold, or other minerals, upon Bowles' land, which was to continue "as long as they may deem it worthy of searching and working for gold and other metals ; " and they had no power conferred to sell or to assign their contract, either as to their "*privilege*" or as to their covenant obligations, for the faithful performance of which, on their part, they expressly covenanted in a penalty of five thousand dollars. They were skilled and experienced miners, and their personal skill was contracted for. They were only required to continue their operations, under the lease, so long

as they might deem it worth while to do so; and as soon as they should find it "unworthy," or unproductive, they were at liberty to stop and abandon the enterprise; and this Kirtley did do, and abandon the partnership and dissolve it as to him, on the 7th of March, 1836, and the Fishers did likewise, as to them, by their re-transfer to Bowles on 4th January, 1842, and the absolute and total non-action of abandonment of the undertaking from 1842 to this day. The deed from Kirtley to Hodgson, 7th of March, 1836, amounted to nothing, and conferred no right whatever, such license not being assignable. 2 Minor's Inst., p. 22, 6 (h); *Barksdale* v. *Hairston, supra.* But even if his said assignment could have been valid and operative, he did not, and could not, confer upon his alienee, Hodgson, anything more or other than his own limited and conditional rights and obligations under the contract with Bowles. The whole conduct of the parties, both Colonel Bowles and Mr. Hodgson, from 1836 to 1880, shows a complete abandonment of the contract of 7th of August, 1834, and that for over fifty years Colonel Bowles was in full, complete, and uninterrupted adverse possession of the land and minerals, incurring heavy expenses in money, and unintermitting search and labor to develop the supposed mineral value of the land in entire good faith and full persuasion that he was the rightful and sole owner thereof.

Even on the contention of the appellant that the assignment of Kirtley March 7th, 1836, to Joseph Hodgson was valid and operated to vest an interest in said Hodgson in the "*privilege,*" Hodgson could only claim the settlement of an account between him and Bowles in which he would have to be charged with the performance of his assignor's covenant contract, and with a contributive share in the expenses and outlay of Bowles for over forty years, which would bring Hodgson largely in debt to Bowles; but the transactions to be inquired of, in any such attempted ascertainment, cover a period of over fifty-three years; and the parties concerned in them are all dead, except

Mr. Hodgson, and so of all the witnesses.   No accounts appear
to have been kept, and no papers, of any sort, have been filed
or are alleged to be in existence; and a court of equity cannot
be invoked to the worse than idle and impossible attempt to
approximate a correct result of any such account, even though
the appellant had any equity to ask for it.   (See *Harrison* v. *Gar-
nett,* 23 Gratt., 223; *Stamper's adm'r* v. *Garnett,* 31 Gratt., 550,
and 30 Gratt., 576; 11 Gratt., 364 and 615; *Coleman* v. *Lyne's
executor,* 4 Rand., 459; *Hatcher* v. *Hall,* 77 Va., 573–576. And,
on abandonment of right, see *Nelson* v. *Carrington,* 4 Munf.,
332–343. · We think the decree dismissing the petition of
appellant complained of is plainly right, and are of opinion to
affirm the same.

DECREE AFFIRMED.