# 𝔖taunton

FLOYD BOSTIC, ET AL. v. DIDENA BOSTIC, ET AL.

September 6, 1957.

Record No. 4690.

Present, All the Justices.

The opinion states the case.

*J. E. Duff* (*C. S. Wilson*, on brief), for the appellants.

*A. T. Griffith* (*Brantley B. Griffith*; *T. J. Bondurant*, on brief), for the appellees.

EGGLESTON, J., delivered the opinion of the court.

By deed dated February 14, 1946, James Bostic conveyed with general warranty and covenants of title to his wife, Didena Bostic, "for and during her natural life," and to their son, Carnie Odell Bostic, "the remainder in fee simple" in, two tracts of land containing approximately 95 acres in Russell county, Virginia. The stated consideration was one dollar and "love and affection." The deed contained this paragraph, the proper interpretation of which is the subject of the present appeal:

"Party of the said first part hereby expressly reserves unto himself the right to mine and sell coal and other minerals underlying said tracts of land, as well as the right to cut, sell, manufacture or otherwise dispose of timbers on said premises."

James Bostic died intestate in 1952, leaving surviving his widow, Didena, their son, Carnie, who was then an infant, and seven sons and daughters and the children of a deceased daughter by a former marriage.

In 1955 Didena Bostic filed her bill in the court below against Carnie Odell Bostic, her infant son, who was then nineteen years of age, and R. L. Matney and Sherman Meadows, praying that the court ratify and confirm a mining lease which she had entered into with Matney and Meadows giving the latter the "sole and exclusive right and privilege of mining and removing of any and all of the coal underlying" the land which her husband had conveyed to her and her son. The bill alleged that his interest in the land, acquired under the deed from his father, was the only property which the infant owned; that the property was producing no income; that the lease would be to the infant's best interest; that if he were dead she, his mother, would be his sole heir and distributee; and that he and she were the only persons who were interested in the land and whose interests could be affected in any manner by the confirmation and approval of the lease.

After the usual answers had been filed, a guardian ad litem appointed who answered, and depositions taken, the court entered a decree approving the lease and appointing a special commissioner to execute it.

In February, 1956, and while the cause was still pending, Floyd Bostic and certain of the half brothers and sisters of Carnie Odell Bostic, and the children of a deceased half sister, filed their petition alleging that they were necessary parties to the cause and had been omitted therefrom; that by the terms of the deed whereby James Bostic had conveyed the property to Didena and Carnie Odell Bostic the grantor had "expressly excepted the coal from the operation of said deed;" and that the coal was still owned by James Bostic at the time of his death and passed to his heirs at law, including the petitioners. The prayer was that the petitioners be admitted as parties to the cause, that the matter be reheard, that their rights in the coal be adjudicated and fixed, and that Matney and Meadows be enjoined from mining the coal under the land pursuant to the lease which had been approved by the court's prior decree.

The petitioners were admitted as proper parties to the cause and after the necessary answers had been filed to the petition depositions were retaken. The lower court entered a decree holding that the deed from James Bostic "vested in the said Didena Bostic and Carnie Odell Bostic the title to the coal and timber situate upon and under the lands described therein, the said Didena Bostic taking a life estate therein and the said Carnie Odell Bostic taking the remainder therein, and that the petitioners, Floyd Bostic and others did not inherit any interest in the said coal and timber through the death of the said James Bostic."

The decree further adjudicated that the mining lease was to the best interest of the infant, Carnie Odell Bostic, and accordingly it was again ratified and approved.

From this decree Floyd Bostic and the other petitioners who intervened in the cause have appealed. In their assignments of error they challenge the correctness of the lower court's holding that they have no interest in the coal and minerals under and the timber on the land. They contend that it was the purpose and intent of the restrictive paragraph to effect a severance of the estate in the surface of the land from the estate in the underlying minerals and growing timber and to except from the operation of the conveyance of the land such minerals and timber, thereby retaining title to them in the

grantor, and that upon the death of the grantor intestate the title to the minerals and timber passed to his heirs at law, including the petitioners.

The contention of the appellees, Didena Bostic and her son, which was in effect upheld by the lower court, is that by virtue of the restrictive paragraph the grantor merely reserved unto himself the personal privilege or license to mine and sell such of the underlying coal and to cut and sell such of the timber on the land as he might choose, and that such privilege ceased upon the death of the grantor, leaving them, the appellees, the absolute owners of the land, the coal and minerals thereunder, and the timber thereon.

[█] It is, of course, elementary that a conveyance of land without reservation or exception embraces the underlying minerals (*Steinman* v. *Vicars*, 99 Va. 595, 601, 39 S. E. 227) and the growing trees and timber thereon (Graves Notes on Real Property (1912 Ed.), § 11, p. 13). And it is equally well settled that there may be a severance of the mineral estate from the surface estate (13 Mich. Jur., Mines and Minerals, § 5, pp. 9, 10) and a severance of the estate in trees and timber from the estate in the land (18 Mich. Jur., Trees and Timber, § 2, p. 512). A common method of severance is by an exception in the deed of conveyance. That is, an owner may convey the surface of the land and except from the operation of the conveyance the underlying minerals, or vice versa. 13 Mich. Jur., Mines and Minerals, §§ 6, 7, p. 11 *ff*. Similarly, he may convey the land and except from the operation of the conveyance the growing timber, or vice versa. 54 C. J. S., Logs and Logging, § 7, p. 679; 18 Mich. Jur., Trees and Timber, § 2, p. 512.

█ In Minor on Real Property, 2d Ed., § 51, p. 74, the author says:

"In construing grants of mining rights, care must be taken to distinguish between the *conveyance of the minerals* themselves in place (which usually confers upon the grantee the *exclusive* ownership and control thereof, and implies a license to dig for and remove them) and the grant of an authority, license, or profit *a prendre*, under which the grantee is entitled to mine the ore, stone, etc., and remove it, in which case he has no interest in the land or in any ore save that actually mined. In the latter case the grantee's right to mine is not necessarily exclusive of the right of the owner or his assignee to do likewise. It is exclusive only in those cases where it is so agreed between the grantor and grantee."

In Graves Notes on Real Property (1912 Ed.), § 12, p. 15, we find this clear exposition of the underlying determinative principles:

"It is now settled that, if the grant or reservation of the right to dig minerals is *exclusive and unlimited in all respects*, it will be regarded as carrying the entire ownership of the ore in place beneath the ground; that this exclusive and unlimited right to take minerals is equivalent to a grant or reservation of the minerals themselves, and constitutes a *corporeal* hereditament, not a mere privilege, or profit *a pendre;* but on the other hand, if the right to take the minerals be not exclusive, so that the grantor may dig as well as the grantee, or if it be *restricted* to a specified quantity or to certain purposes, it is an incorporeal hereditament, because it is not a grant or reservation of the *entire* ownership of the ore beneath the grantor's land."

The same principle is thus expressed in 58 C. J. S., Mines and Minerals, § 155, pp. 318, 319:

"Where the grant or reservation is merely of the right to enter and take minerals from the land, especially where it is not exclusive, it is not an absolute grant or reservation of the minerals in place as real estate. Such grant or reservation is * * * a mere incorporeal right, privilege, or license to take minerals from the land, which leaves the title to the mineral in place remaining in the owner of the land and gives to the person having the privilege or license no title to the minerals until they have been mined. * * *"

See also, 36 Am. Jur., Mines and Minerals, § 63, pp. 322, 323; *Delaware & H. Canal Co.* v. *Hughes,* 183 Pa. 66, 38 A. 568, 38 L. R. A. 826, 63 Am. St. Rep. 743; *Stockbridge Iron Co.* v. *Hudson Iron Co.,* 107 Mass. 290; *Caldwell* v. *Fulton,* 31 Pa. 475, 72 Am. Dec. 760.

In our opinion, when the language of the restrictive paragraph in the Bostic deed is interpreted according to these principles and in the light of the surrounding circumstances the lower court's conclusion is right.

Both the language of the deed and the oral evidence show that it was a deed of gift by the grantor to his wife and infant son. There is no evidence as to the monetary value of the surface of the land or that of the underlying minerals. The evidence is that there is no valuable timber on the land. The undisputed evidence is that the land is rough and mountainous, unsuitable for agricultural purposes, and has no "material value" or "productive value" beyond the coal to be procured therefrom. Neither the deed nor the oral evidence

shows that there were any improvements on the land. In the past there had been some mining of coal on the property, but the extent of this and of the remaining coal is not shown.

Upon an analysis of the language of the restrictive paragraph we observe that it does not in terms "except" the coal, minerals and timber from the operation of the conveyance, nor does it expressly say in appropriate language that such was its purpose or intent. On the contrary, the grantor "reserves" certain rights with respect to the coal, minerals and timber. The reservation is "unto himself" and does not expressly include "his heirs" which would have indicated a reservation of an inheritable estate.

What are the rights or nature of the rights which the grantor reserves? He does not expressly reserve the title to or ownership of the coal and timber. Neither does he reserve "the exclusive right" to take the coal and timber from the land, nor does he reserve the right to "all of the coal." It is interesting here to compare the language of the restrictive paragraph with that in the lease to Matney and Meadows, approved by the lower court, in which there is granted "the *sole and exclusive right* and privilege of mining and removing of *any and all of the coal* underlying" the land. (Emphasis added.)

Again, there is no language in the restrictive paragraph to indicate that the grantees as well as the grantor might not "mine and sell coal" or "cut, sell * * * timbers" on the land.

The appellants rely strongly on *Hale* v. *Grow*, 88 W. Va. 173, 106 S. E. 409. There a deed of conveyance contained this restrictive provision: "The said parties of the first part expressly reserve, however, the right to all oil, coal or other minerals pumped or excavated from the land herein conveyed, with the privilege of working upon said land for the purpose of obtaining such oil or minerals, * * *." It was held that this constituted an exception and retention of the title to minerals in place. The court pointed out that, "Reservation of right to take out all of the minerals negatives intent to retain a mere mining privilege to be enjoyed with the grantee also mining as owner."

In the case before us the grantor did not reserve the right to "all" of the coal, minerals and timber on the land, but merely the right to take them, leaving a similar right in the grantees.

*List* v. *Cotts*, 4 W. Va. 543, is also relied on. There the deed granted a small piece of land in fee simple and "Also, the right of

digging for coal under the adjoining land, lying east of the said lot". The habendum clause read: "To have and to hold the said lot or parcel of ground, together with all and singular the tenements, hereditaments, and appurtenances to the same belonging, * * * with the right of digging for coal as aforesaid, unto the said [grantee], *his heirs* and assigns forever, * * *." In holding that this was a grant of the title to the coal lying under the adjoining lot, the court pointed out that under the habendum clause the same terms were employed to denote a fee simple estate both in the land conveyed and in the coal under the adjoining tract. That case, of course, is readily distinguishable from the case now before us.

The case of *United States Coal & Oil Co.* v. *Harrison*, 71 W. Va. 217, 76 S. E. 346, 47 L. R. A., N. S., 870, is strikingly similar to the case with which we are concerned. There the grantor and his wife conveyed two tracts of land to their daughter as an advancement. The deed contained this clause: "And the said William B. Dempsey also reserves to himself and to his said wife the privileges of selling and removing any timber from said land that they may desire to sell or to use, * * *." It was held that by the terms of the restrictive clause the grantor did not reserve title to the timber, but merely an unassignable license to remove it. The opinion points out that since there was no reservation of the right to cut and sell all of the timber it amounted to no more than the reservation of a personal privilege.

We have been pointed to no case, nor have we been able to find any, in which the precise question here involved has been previously presented to this court. But there are a number of our decisions which tend to support the conclusion which we have here reached.

In *Hodgson* v. *Perkins*, 84 Va. 706, 5 S. E. 710, it was held that an agreement between a landowner and certain miners giving the latter the privilege of digging for gold on the owner's land and to hold the same for such purpose, and none other, created no estate in the land but only an unassignable license.

*Young* v. *Young*, 109 Va. 222, 63 S. E. 748, was a suit to construe a will, the second paragraph of which read: "I gave the right to S. E. Young, D. S. Young and W. J. Young the right to sell *eny* timber or wood on my farm my three children." This court held that under this clause only a license to sell timber passed to the persons therein named and that it created no estate or property in the timber itself until it was actually severed from the land. In reaching that conclusion it was pointed out that a license to cut and sell timber does not

vest title in the licensee prior to the severance of such timber. 109 Va., at pages 224, 225.

*Church* v. *Goshen Iron Co.*, 112 Va. 694, 72 S. E. 685, involved the interpretation of a provision in an agreement whereby Goshen Iron Company gave Church the right "to get and remove ballast rock from its limestone quarry" upon stated terms that Church would furnish all machinery, pay a stated royalty for rock removed, and remove at least a stated amount every working day. It was held that the provision conferred upon Church a mere license to remove the rock from the quarry, but no interest or estate in the rock until it was separated from the land.

In *Yukon Pocahontas Coal Co.* v. *Ratliff*, 181 Va. 195, 206, 24 S. E. 2d 559, 564, we held that the reservation of "the right to use coal for domestic purposes" was a reservation of a personal right which terminated upon the death of the grantor.

The appellants cite *Crisman* v. *Swanson*, 193 Va. 247, 68 S. E. 2d 502, and other cases to support the proposition that the reservation by the grantor of the right to sell coal which he might mine indicates a reservation of the full ownership of and title to such coal. That would be true of the coal which the grantor had actually mined and severed from the land. But we are here concerned with the ownership of and title to the coal before it was mined or severed. The fact that the grantor would own or have title to coal which he had mined does not, of course, indicate that he owned or had title to such coal before it was mined.

To sustain the contention of the appellants would largely defeat the purpose of the deed. It would mean that by the deed the grantor conveyed to his wife and infant son merely the surface of a tract of rough, mountainous, unproductive land, retaining in himself the title to the underlying minerals and timber, the only valuable interest in the land. In short, it would mean that by the deed of gift the grantor gave his wife and child nothing of value and reserved everything of value to himself.

Moreover, such a conclusion would run counter to the well-recognized principle that where the language of a deed is ambiguous its provisions should be construed most strongly against the grantor and in favor of the grantee. 5 Mich. Jur., Deeds, § 58, pp. 732, 733.

In *Carrington* v. *Goddin*, 13 Gratt. (54 Va.) 587, 610, we held that where it is doubtful on the face of a deed whether one or two parcels of land were intended to be conveyed the deed will be con-

strued to pass both. The same rule of interpretation applies in determining the nature and extent of the title or right reserved to the grantor. 58 C. J. S., Mines and Minerals, § 155, p. 318; *Chapman* v. *Mill Creek Coal & Coke Co.*, 54 W. Va. 193, 46 S. E. 262, 263.

For these reasons the decree appealed from is

*Affirmed.*