**UNITED STATES of America,**
Appellee,

v.

**ATOMIC FUEL COAL COMPANY,**
Appellant.

**No. 11219.**

United States Court of Appeals
Fourth Circuit.

Argued June 23, 1967.

Decided Sept. 11, 1967.

John M. Stephens, Pikeville, Ky. (Stephens, Combs & Page, Pikeville, Ky., on brief), for appellant.

Robert M. Perry, Attorney, Department of Justice (Edwin L. Weisl, Jr., Asst. Atty. Gen., and Roger P. Marquis, Atty., Department of Justice, and Thomas B. Mason, U. S. Atty., on brief), for appellee.

Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

In the exercise of eminent domain the United States on June 4, 1964 acquired, with many other properties, varying interests in three small parcels of land for the construction and operation of a flood control dam and reservoir on Pound River, Dickenson County, Virginia. The parcels are contained in tracts designated as Nos. 111–1, 111–2 and 111E–4. These tracts were parts of a 581.88-acre boundary in which the Atomic Fuel Coal Company claimed an interest as lessee of the mineral rights. The District Court allowed Atomic no compensation, holding that it possessed nothing but a revocable license to remove the minerals. We reverse, and remand for a new trial, as to Atomic's claim in tract No. 111–1, concluding that Atomic was a lessee, not merely a licensee, and entitled to Constitutional just compensation for the leasehold rights taken from it.

As to the other two parcels the record is too obscure to allow an intelligent review. Neither the commission appointed to fix compensation in the case, nor the opinion of the Court, nor the briefs of the counsel give an account of the disposition in respect to them. The best we make out is that in No. 111–2 the take excluded any right to the surface and the minerals thereunder except to flood and submerge the land and, in addition, the unrestricted use of the land for two years from the date of possession. In No. 111E–4, the take included only the right to flood the land, title to the timber and improvements thereon (except structures used in connection with mining operations) and the right for two years from date of possession to an unrestricted use of the land. On remand, the trial court will state specifically, and file in the case, its findings of fact and conclusions of law as to these two properties.

In No. 111–1 the fee simple title was condemned and its case history is as follows:

1. By an indenture dated December 17, 1874, Amos Willis, as owner in fee simple of the 581.88 acres, conveyed to J. D. Price and A. J. Steinman all the "Bituminous and other coals, iron, ore, and all other minerals, Except *Manganese* and fire clay, in, under, and upon" the entire tract, with the right of ingress and egress to remove them.

2. Steinman Development Company, a New Jersey corporation, succeeded Price and Steinman in this ownership.

3. That company in an indenture dated January 1, 1957, describing itself as "Lessor" and the other party, Pound River Coal Company, Inc., as "Lessee" declared that the "Lessor hereby leases to the Lessee for a period of Five (5) years from December 11, 1956, for coal mining purposes only, the seam or seams of coal lying within" the 581.88-acre tract, exacting certain royalties upon the production and also prepayment of sums on account thereof.

4. This instrument gave the Lessee the right to an extension for "another five-year period on the same terms" but upon increased royalties, and provided further that "if all the mineable and merchantable coal on this lease is not exhausted at the end of this additional five-year period, the Lessor agrees to extend this lease for a further period or periods not to exceed twenty (20) years." The first extension of five years was granted pursuant to a letter from Pound River dated October 15, 1961.

5. By a written agreement dated December 9, 1963 Pound River Coal Company, Inc., reciting the consent thereto of Steinman Development Company and apparently without its objection, assigned "the existing coal lease" between Steinman and Pound River to Atomic Fuel Coal Company, Inc., the appellant here.

6. On June 4, 1964 the United States filed its complaint in this action for the condemnation of land, as already noted, for the construction, operation and maintenance of the John W. Flannagan Dam and Reservoir, a flood control project.

7. An order of possession was issued by the District Court under date of June 4, 1964 and a declaration of taking was filed on June 4, 1964; the complaint and declaration included within tract No. 111–1, 5.23 acres of the 581.88-acre area heretofore described; within tract 111–2, 6.66 acres thereof; and within tract 111E–4, 5.11 acres thereof.

8. Both the complaint and the declaration of taking noted among "purported owners" the Atomic Fuel Coal Company as well as the Steinman Development Company.

9. The United States, without notice to the appellant Atomic Fuel Coal Company, assignee of the Steinman Company of the latter's mineral rights in the 581.88-acre tract, agreed with the Steinman Development Company upon compensation, and paid it, for all the mineral rights Steinman had acquired from Willis in 1874 (para. 1 supra) within the condemned tracts, apparently concluding that Steinman had not parted to any extent with these rights, and that Atomic had procured no compensable rights in the minerals by the assignment from Steinman described in para. 5 supra.

10. The commission, on the same basis, denied Atomic any compensation, except $1.00, and the Court denied even that. This is the order from which Atomic now appeals.

■ Time, money and litigation could have been saved the United States and the other parties if the customary procedure had been followed in this case. With notice of the claim of Atomic, its interest as well as that of all other claimants should have been determined by the Court before directing the ascertainment of just compensation. Certainly the legal question of the character of Atomic's claim ought not to have been left to the commission.

■ The validity of the claims once declared, all of the recogized claimants had the right to be heard by the commission upon the amount due for the whole of the take. This amount would then be put into the registry of the Court. Thereafter claimants would be heard by the Court upon the distribution of it among them. By this method the Government would be relieved of the problems of distribution, for its only obligation is to pay as a whole for what it expropriates. Messer v. United States, 157 F.2d 793, 795 fn. 5 (5 Cir. 1946).

Looking at Atomic's claim in Tract No. 111–1, we hold that the Steinman Company was the absolute owner, on conveyance from Willis (para. 1 supra), of all the minerals beneath the surface of the 581.88-acre tract, including the power to sell, lease or otherwise dispose of them; Atomic became the lessee thereof, through assignment from Pound River Company, under the agreement between Steinman and Pound River (para. 3 supra), with the irrevocable right during the stipulated initial and extended terms to mine the minerals. Of course, Steinman remained the owner of the reversion after expiration of the lease periods.

The Government argues that a condemnation defendant who has only a license to abstract elements from the land, without ownership accruing until after severance, has no compensable interest as a condemnee. Assuming arguendo the soundness of this contention, it does not succeed here because we hold that Atomic received title to the minerals in situ. Guides in the determination of the legal nature of the rights in minerals are clearly set forth in 1 Minor on Real Property (2d ed. Ribble) at 71–74. As it is a classic on property in Virginia, we quote at length:

"Interests in mining rights may be divided generally into two classes; (1) Title to minerals in place with such easements as may be necessary for their removal, and (2) the right to acquire ownership of minerals by severance although title to the property is in another. Such right to acquire ownership may be exclusive or it may be shared in common with the owner of the premises or with others. It is not exclusive unless clearly made so. The minerals in place under the surface are susceptible of an ownership distinct from that of the surface, and may constitute a separate corporeal hereditament. Thus the title to the surface and soil may be vested in one person and that to the mines and minerals under the surface in another. The owner of land may convey the surface without the minerals or convey the minerals and retain the surface. He may also lease the land for a limited time, giving the lessee the right to take minerals. In such case the lessee is in the same situation as the ordinary lessee except that he does not commit waste in opening and operating mines on the premises. Or the owner may convey the right to take minerals for a limited time and pass with it no right in the surface, except such as is necessary to work the mines. These cases are not properly considered as transfers of title to the minerals in place, but rather as transfers of the right to take minerals.

"In construing grants of mining rights, care must be taken to distinguish between *the conveyance of the minerals* themselves in place (which usually confers upon the grantee the *exclusive* ownership and control thereof, and implies a license to dig for and remove them) and the grant of an authority, license or *profit a prendre*, under which the grantee is entitled to mine the ore, stone, etc., and remove it, in which case he has no interest in the land or in any ore save that actually mined. In the latter case the grantee's right to mine is not necessarily exclusive of the right of the owner or his assignee to do likewise. It is exclusive only in those cases where it is so agreed between the grantor and grantee." [Accent by author.]

Enunciation of the Virginia doctrine in the same tenor is found in Bostic v. Bostic, 199 Va. 348, 99 S.E.2d 591, 66 A.L.R.2d 971 (1957) and Church v. Goshen Iron Co., 112 Va. 694, 72 S.E. 685 (1911). In short, entirely aside from the matter of compensability, it is that only a lease, and not a license, gives an immediate interest in minerals in their natural state. Examining the terms of the agreement between Steinman and Pound River Company, to which Atomic succeeded, we find it a lease—a mining lease.

Features of the agreement warranting our conclusion it bestowed a leasehold upon Pound River Company and Atomic, the former's assignee, are numerous. The parties designated each other as lessor and lessee, the operative phrase was "hereby leases", and a specific term and extensions are prescribed. Limited rights of entry for inspection of the lessee's operation were retained by the lessor—a reservation hardly necessary if, as the Government alleges, the lessor's rights under the agreement were coextensive with those of the lessee. Again, the transferee and its assign were granted *"all* the mining surface and timber rights" which had been conveyed to Steinman by Willis, the owner of the whole, in 1874. The last circumstance is

a conclusive indication that the grantee was given the exclusive right to these items and could have ejected anyone else from their enjoyment. A right of this breadth was held in Bostic v. Bostic, supra, 199 Va. 348, 99 S.E.2d 591, to be determinative that an agreement is a lease and not merely a license or profit a prendre.

When an instrument has the characteristics we find in the agreement between Steinman and Pound River Company, predecessor of Atomic, it amounts to a mining lease. In Miller v. Kellerman, 228 F.Supp. 446, 459–460 (W.D. La.1964), aff'd 5 Cir., 354 F.2d 46, cert. den. 384 U.S. 951, 86 S.Ct. 1571, 16 L.Ed. 2d 548, it is said:

"A mineral lease is a contract which permits the lessee to explore for minerals on the land of the lessor in consideration of certain commitments by lessee."

See also Gordon v. Empire Gas & Fuel Co., 63 F.2d 487 (5 Cir. 1933) and United States v. Gratiot et al., 39 U.S. (14 Pet.) 526, 538, 10 L.Ed. 573 (1840).

We disagree with the Government's position that the owner of the underlay, and not the surface, could not lease the mining rights. Steinman was the owner in fee of the minerals under the 581.88 acres with the right of access and egress for their removal. Possessed of this ownership and this right, Steinman was empowered to contract with another so as to give the latter an exclusive and irrevocable right to remove the minerals for a specified time. In this Steinman was conveying to the other party title to the minerals while in place, and according him the right to take them from the ground as and when he desired, provided he paid the reserved royalties.

This lease clearly was something of value. This is recognized by the requirement that lump sums be paid—and had been paid by Atomic in the sum of $5,-865.00—at the commencement of the first term and the extension, on account of the prospective royalties. These advance payments were not refundable. Presumably the lease had a market value, from which a commission, jury or a court could fix just compensation for its taking. Actually, Atomic paid $11,575.00 for the rights assigned it by Pound River. If there was no market, then the tribunal could have looked to the value as determined by its productivity—analogously to an evaluation by capitalization of rents or profits based on prior experience. United States v. 25.406 Acres of Land, 172 F.2d 990, 993 (4 Cir. 1949); Westchester County Park Commission v. United States, 143 F.2d 688, 693 (2 Cir. 1944). The evidence attests to a prior and profitable mining of this land in recent years.

Allowance of compensation to Atomic is not payment for the frustration of a prospective business opportunity, as the Government suggests, citing United States ex rel. T.V.A. v. Powelson, 319 U.S. 266, 281, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943). Here the United States has taken minerals in the ground belonging to Atomic in the lease periods. This is vastly different from the mere preclusion of a future exploitation of the mining lands. It is reimbursement for property actually taken. The potential productivity of the lease is looked to only to ascertain its value.

As the case was not tried below on these principles, we must set aside the judgment now on appeal, and remand the action for the ascertainment of the fair value of the lease in the hands of Atomic. On retrial, the District Court will make specific findings and state its conclusions of law in respect to the part of tract 111–1, as well as in regard to tracts Nos. 111–2 and 111E–4 as heretofore directed.

Reversed and remanded.