**In re TIDEWATER SAND CO., INC.**

**Edward G. GRANT, Trustee, Plaintiff,**

**v.**

**Richard H. ROSE, Jr., Material Delivery, Inc. and Mechanicsville Concrete, Inc., Defendants.**

**Bankruptcy No. 91–25939–B.**
**Adv. No. 94–2074–B.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Oct. 20, 1994.

Frank J. Santoro, William C. Northington, Marcus, Santoro & Kozak, Portsmouth, VA.

Arthur A. Lovisi, Office of Gen. Counsel, Franklin, VA.

## MEMORANDUM OPINION AND ORDER

HAL J. BONNEY, Jr., Bankruptcy Judge.

Edward G. Grant, trustee, brings this adversarial proceeding for turnover of property and other relief pursuant to §§ 542(a), 548(a)(2) and 550 of the Bankruptcy Code. This matter came to trial on September 8, 1994. For the reasons stated herein, the Court finds in favor of the trustee.

### FINDINGS OF FACT

Tidewater Sand Co., Inc. ("Tidewater") was engaged in the business of mining and selling sand. In the course of its business, Tidewater owned certain equipment and mining rights to a property known as the Branchville site in Southampton County, Virginia. On October 1, 1991, Tidewater sold its equipment and rights to mine in the Branchville site to defendants (collectively known as Richard Rose, Jr., Mechanicsville Concrete, Inc. and Material Delivery, Inc.). At the time of the sale Tidewater had approximately 93,000 tons of sand stockpiled. The parties did not specifically make the sand a part of the sale. Because it suffered financial difficulties, Tidewater Sand filed for reorganization under Chapter 11 of the Bankruptcy Code on October 23, 1991, at which time Tidewater owed royalty fees to the landowner for the 93,000 tons of sand that it previously mined. This petition was subsequently converted to a Chapter 7 case on October 8, 1992, at which time Edward G. Grant as appointed trustee for the bankruptcy estate.

On October 28, 1991, defendants began to remove the sand and pay royalty fees to the landowner for the sand. On or about December 12, 1991, Tidewater Sand, as debtor-in-possession, requested and received permission from defendants to remove 3,000 tons to fill a specific order. Upon the removal of the 3,000 tons, Tidewater paid the royalty fees on the amount of sand removed. Thereafter, it ceased to remove the sand. On March 11, 1992, defendants purchased the Branchville mining site.

The trustee commenced this adversarial proceeding to recover the sand and equipment sold to defendants. In count one, the trustee alleged defendants retained or converted property of the estate when it removed the remaining 90,000 tons of sand and took possession of the mining equipment. Here the trustee relied on § 542(a) of Bankruptcy Code in his demand. In count two, the trustee alleged the transfers of the sand and equipment are avoidable under § 548(a)(2) and § 550(a). According to the trustee, the transfers occurred within one year before the filing of the bankruptcy petition, the transfers occurred when Tidewater was insolvent and Tidewater received less than a reasonable equivalent value for the sand and equipment.

In its answer, defendants asserted several affirmative defenses. First, defendants argued that the statute of limitations barred the trustee's claims. They maintained that the 2–year statute of limitations under 11 U.S.C. § 108 applied and accordingly barred the trustee's claim. Second, defendants as-

serted that the sand was not part of the bankruptcy estate and thus was not subject to turnover. They alleged title to the sand remained with the landowner of the Branchville site until Tidewater paid royalty fees for the sand. Because Tidewater did not pay the royalty fees, defendants argue, title remained with the landowner. Alternatively, defendants maintained that if the Court found the sand as property of the bankruptcy estate, then the Court should give the sand a value of $5000.00, the amount of royalty fees owed. Subsequently, defendants moved to dismiss the action or for summary judgment on both counts. Prior to trial, the parties settled the issue regarding the equipment. Therefore, only the ownership of the sand remains at issue.

The Court first considered defendants' motion to dismiss. The Court held that the statute of limitations did not bar the trustee's claims. It reasoned that the action under § 542 was controlled by Virginia state law, which is 5–year statute of limitations, and not the 2–year statute of limitations under § 108. Concluding that the applicable statute of limitations did not toll, the Court denied defendants' motion to dismiss.

The Court then considered defendants' motion for summary judgment. Here defendants argue that the sand is not personal property. Defendants rely on two theories. First, they argue sand is not considered a mineral which becomes personal property and whose title passes when it is mined. They distinguish sand from minerals in terms of value. According to defendants, sand is worth much less. Sand, unlike minerals, is an inexpensive commodity because two-thirds of its cost is attributed to transportation costs. Second, they argue under Virginia law sand does not become personal property when it is severed from the land. Sand becomes personal property only when royalty fees are paid. Because Tidewater did not pay the royalty fees, the sand never became personal property. The Court denied the motion for summary judgment.

At trial two witnesses took the stand. First, the Court received testimony from James Jackson who was the president of Tidewater at the time of the filing of the bankruptcy. Jackson was exposed to the sand mining business with his family as a boy since 1963. He has engaged in this business since 1980. Jackson testified Tidewater mined the sand at issue prior to filing bankruptcy. He further identified a picture of the sand that he took when 93,000 tons existed at the Branchville site. He testified that the sand in the picture was indeed the same sand that Tidewater mined and that existed when the company filed bankruptcy. His testimony as to the amount of sand is the most credible.

Jackson also testified he received a call from Richard Rose, one of the named defendants, before the bankruptcy filing. In their conversation Rose said that he heard Tidewater had financial problems and that he wanted to buy some of its equipment and mining rights. Jackson specifically told Rose that the 93,000 tons of sand that Tidewater mined had been left on the Branchville site. He also informed Rose that Tidewater was preparing to file bankruptcy and that the sand would belong to the bankruptcy estate upon the filing of the petition. Jackson also testified Rose later received a warning not to sell or remove the sand from Alexander Smith, the attorney for Tidewater, as debtor-in-possession. Rose was clearly on notice. In addition, Jackson testified that Tidewater was insolvent when it sold the equipment and mining rights to the Branchville site to defendants. This is not disputed. Jackson also proffered $189,000 as the value of the sand.

Jackson also revealed that Tidewater Sand carefully kept contemporaneous records of its inventory which included the sand at issue. Upon receiving questions regarding certain errors in Tidewater Sand's inventory records, Jackson disclosed that they were mere bookkeeping errors. The Court found Jackson to be a careful, knowledgeable and credible witness.

The only other witness was Timmy L. Young. He worked at Tidewater Sand until October 3, 1993, at which time he became an employee of defendants. He corroborated Jackson's detailed narrative of the picture of the sand and testified that he saw the sand when he began to work at the Branchville site for defendants. Further, Young remem-

bered that he assisted in the removal of Tidewater's sand in November 1991 although he also participated in the removal of other sand at the site for defendants.

At the close of the trustee's case, defendants moved for a directed verdict. The Court reserved its judgment until the conclusion of the defendants' case. In their case-in-chief, defendants introduced evidence of payments of royalties and payments to third parties related to equipment leases pursuant to the sale contract with Tidewater Sand. Upon the conclusion of defendants' case, the Court denied defendants' motion for a directed verdict.

## CONCLUSIONS OF LAW

To determine whether the sand is property of the estate, the Court first considers whether the sand at issue is personal property. In determining the answer, the Court must necessarily determine whether sand is a mineral under Virginia state law.

### A. Virginia Code

■ The Virginia Code defines mineral in three parts. Section 45.1–180(*l*) states:

Mineral—Ore, rock, and any other solid homogeneous crystalline chemical element or compound that results from the inorganic processes of nature other than coal.

Similarly, section 45.1–161.8 states:

'Mineral' means clay, stone, sand, gravel, metalliferous and non-metalliferous ores, and any other solid materials or substance of commercial value excavated in solid form from natural deposits on or in the earth, exclusive of coal and those minerals which occur naturally in liquid or gaseous form.

Finally, section 45.1–229 states:

'Other minerals' means clay, stone, sand, gravel, metalliferous and non-metalliferous ores, and any other solid materials or substances of commercial value excavated in sold form from natural deposits on or in the earth, exclusive of coal and those minerals which occur naturally in liquid or gaseous form.

The sand at issue comports with the legal description of minerals under Virginia law. Therefore, the Court concludes that sand is a mineral under Virginia law.

■ Upon holding that sand is a mineral under Virginia law, the Court must determine when title in the sand necessarily vested in Tidewater. Under state and federal caselaw, a privilege or license to take minerals from the land leaves title in the owner of the land and gives the person having the privilege or license no title to the minerals until they have been mined. *Bostic v. Bostic,* 199 Va. 348, 99 S.E.2d 591 (1957); *United States v. Atomic Fuel Coal Co.,* 383 F.2d 1 (4th Cir.1967); see *Joann Coal Company v. United States,* 883 F.2d 5 (4th Cir.1989). Accordingly, the Court finds that title in the sand vested in Tidewater Sand when it mined the sand.

### B. Bankruptcy Code

■ Having found that Tidewater Sand owned the sand when it filed bankruptcy, the Court finds that the sand is property of the estate under 11 U.S.C. § 541.[1] Further analysis of the Code requires the Court to consider three other sections.

■ First, the pertinent section of 11 U.S.C. § 542 states:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, control, during the case, of property of that the trustee may use, sell, or lease under section 363 of this title, shall deliver to the trustee, and account for, such property of the value of such property, unless such property is of inconsequential value or benefit to the estate . . .

(c) Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing

---

1. 11 U.S.C. § 541 provides that the "estate is comprised of all the following property, wherever located: . . . all legal or equitable interests of the debtor in property as of the commencement of the case."

to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as of the case under this title concerning the debtor had not been commenced.

Under the plain language of this section, any entity in possession of property of the estate on the date of the filing of the petition must turnover such property to the bankruptcy estate. Turnover is not required in three situations: (1) when the property is of inconsequential value or benefit to the estate; (2) when the holder of the property has transferred it in good faith and without knowledge of the petition; or (3) when the transfer of the property is automatic to pay a life insurance premium under subsection (d).[2] In the case at bar, the Court received testimony that the value of the sand is $189,000 and that defendants knew about the petition when it removed the sand. Accordingly, the Court concludes that defendants cannot claim the exceptions from turnover under § 542 and must turnover the sand to the bankruptcy estate.

■ The Court next considers whether the trustee may avoid the transfer under § 548. The applicable part of 11 U.S.C. § 548 states:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—...

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation ...

Under this section, the trustee may avoid any transfers made within one year before the date of the petition if the transfers were made for less than a reasonably equivalent consideration and if the debtor was insolvent at the time of such transfers. In the case at bar, the transfer occurred approximately twenty-two days before Tidewater Sand filed its petition. Further, Tidewater Sand agreed to receive up to $5000.00 as consideration for the sand that was worth approximately $189,000. Finally, Tidewater Sand was insolvent when the transfer occurred. Thus, the Court finds that the transfers were made within one year before the date of the petition and were made for less than a reasonably equivalent consideration and while the debtor was insolvent. Accordingly, the Court concludes that the trustee may avoid the transfer under § 548 and recover the property or the value of such property under § 550.[3]

### HOLDING

The Court finds the sand as part of the bankruptcy estate and orders defendants to turnover the sand or its value to the trustee.

### DAMAGES OR VALUE

■ Having found the trustee entitled to the subject sand, where is it? Not gone with the wind, but gone. Defendants cannot, then, turn it over. They must pay for its value.

Jackson, Tidewater's president, testified there were 93,572 tons less the 3000 he received permission to sell. What are the remaining 90,572 worth? Jackson says $189,000, or $189,069.93 to be precise. This is a mere $2.09 per ton. Of course, we do not deal with the transportation cost or royalty payments.

This may be compared to the testimony of present cost of $8.37 a ton which would equal $758,087.64! But perhaps the best point of reference is the testimony that $2.50 per ton is the cost to create. This is in line with the

---

2. This exception under subsection (d) is inapplicable to this case.

3. 11 U.S.C. § 550 provides for liability of a transferee of an avoided transfer under § 548 by allowing the trustee to "recover, for the benefit of the estate, the property transferred, or, if the court orders, the value of such property, from the initial transferee of such transfer ..."

$2.09 and the Court will only award what the trustee has sued for.

The Court enters judgment for Edward T. Grant, Trustee, Tidewater Sand Co., Inc., in the sum of $189,069.93 against defendants Richard Rose, Jr., Mechanicsville Concrete, Inc. and Material Delivery, Inc., at lawful interest from this date.

IT IS SO ORDERED.