**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In re: TIDEWATER SAND COMPANY,
INCORPORATED,
<u>Debtor.</u>

EDWARD G. GRANT, Trustee,
<u>Plaintiff-Appellant,</u>

v.

RICHARD H. ROSE, JR.; MATERIAL
DELIVERY, INCORPORATED;
MECHANICSVILLE CONCRETE,
INCORPORATED,
<u>Defendants-Appellees,</u>

and

UNITED STATES TRUSTEE,
<u>Party in Interest.</u>

No. 95-2187

In re: TIDEWATER SAND COMPANY,
INCORPORATED,

Debtor.

EDWARD G. GRANT, Trustee,

Plaintiff-Appellee,

v.

RICHARD H. ROSE, JR.; MATERIAL
DELIVERY, INCORPORATED;
MECHANICSVILLE CONCRETE,
INCORPORATED,

Defendants-Appellants,

and

UNITED STATES TRUSTEE,

Party in Interest.

No. 95-2256

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
J. Calvitt Clarke, Jr., Senior District Judge.
(CA-94-1288-2, BK-91-25939-B)

Argued: March 5, 1996

Decided: April 16, 1996

Before MURNAGHAN and MOTZ, Circuit Judges, and YOUNG,
Senior United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

2

**COUNSEL**

**ARGUED:** William Carl Northington, MARCUS, SANTORO & KOZAK, Portsmouth, Virginia, for Appellant. Arthur Anthony Lovisi, Franklin, Virginia; James Duane Wright, LANE & HAMMER, P.C., Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

At the heart of the instant appeal lies a dispute concerning who once owned 93,000 tons of sand. The Tidewater Sand Company, as the lessee under the terms of an agreement with M & M Associates, had the right to mine and remove sand from the leased premises. Tidewater then assigned its rights under the lease to Material Delivery; at the time of the transfer, approximately 93,000 tons of mined sand were sitting on the site. Twenty-two days later, Tidewater filed for bankruptcy. Over the course of many months, Material Delivery removed the sand from the premises. Tidewater's Trustee then filed suit against Material Delivery and related parties, seeking to recover the value of the sand.

The Bankruptcy Court held in favor of the Trustee, concluding that title to the mined sand passed from Tidewater to Material Delivery at the time of the transfer, that Material Delivery did not pay Tidewater "reasonably equivalent value" for that sand, and that the Trustee could therefore recover a sum equal to the cost of producing it. On appeal, the District Court reversed, holding that Tidewater never had title to the pile of mined sand because it had not yet removed the sand from the premises, and that the sand therefore could not be treated as part of the bankruptcy estate. We affirm the decision of the District Court.

I.

On April 9, 1990, the Tidewater Sand Company--a company engaged in the business of mining and selling sand--entered into a lease agreement with M & M Associates Limited Partnership ("M & M") for premises located in Southampton County, Virginia. Tidewater, the lessee, leased the premises "for the purpose of conducting a borrow pit operation." The agreement defined "borrow material" as sand and gravel. Tidewater was to pay rent to M & M on a month-to-month basis, with the amount of each month's rent determined according to the amount of sand removed from the premises during the preceding month. M & M retained the right to remove borrow material from the site at will, and was not to be required to pay Tidewater for doing so; in fact, Tidewater agreed "to make available such material to [M & M] upon request." Both parties retained the right to terminate the lease for any reason upon giving thirty days' written notice. In the event such notice was given, Tidewater was to have until the end of the thirty-day notice period to remove its property from the site, and 120 days to remove sand from the site in order to satisfy existing contracts.

On October 1, 1991, Tidewater sold its leasehold interest to Material Delivery, Inc. Richard H. Rose, Jr., in his capacity as the sole shareholder of Material Delivery, executed the agreement on behalf of the company. The agreement stated that Material Delivery was also acquiring from Tidewater various "equipment and inventory," including "[a]ny finished sand located on" the site. Material Delivery agreed to pay up to $5,000 "for materials removed [from the site by Tidewater] through September 30, 1991"; the funds were to be used by Tidewater to pay outstanding royalties owed to M & M. The parties later stipulated that Material Delivery had paid Tidewater $3,848.43 in exchange for Tidewater's rights under the lease. On October 28, Material Delivery began to remove sand from the site and to pay M & M the amounts it was owed for that sand under the terms of the lease.

At the time of the sale to Material Delivery, approximately 93,000 tons of sand had been mined and washed by Tidewater and were sitting on the leased site. Over the course of the following months, most of the sand was removed from the property--3,000 tons by Tidewater

4

in December 1991 (with Material Delivery's consent), and the remainder by Material Delivery.

On October 23, 1991--twenty-two days after transferring its interests to Material Delivery--Tidewater filed for reorganization under Chapter 11 of the Bankruptcy Code.**1**

In a letter to Tidewater dated January 30, 1992, M & M expressed concern about the fact that Tidewater was reportedly continuing to remove material from the site despite the assignment of its rights to Material Delivery. M & M expressed no objection to Tidewater's transfer of its interests, whatever they were, to Material Delivery; indeed, M & M asserted that Tidewater's presence on the land following the transfer to Material Delivery constituted trespass and that Tidewater's removal of material from the site was illegal.

On March 11, 1992, M & M sold the premises to Mechanicsville Concrete, Inc. Richard Rose--who, again, was the sole shareholder of Material Delivery--was also Mechanicsville's sole shareholder.

On April 25, 1994, Tidewater's Trustee, Edward G. Grant, Appellant here, brought an action against Rose, Mechanicsville Concrete, and Material Delivery.**2** On August 22, 1994, the Trustee filed an amended complaint under sections 542(a), 548(a)(2), and 550(a) of the Bankruptcy Code to avoid the transfer of Tidewater's interest in the 93,000 tons of mined sand and to recover the value of that sand. In October 1994, the United States Bankruptcy Court for the Eastern District of Virginia held in favor of the Trustee. The court determined that the sand was a mineral under Virginia law; that title in the sand therefore vested in Tidewater once it mined the sand; that the sand was therefore part of the bankruptcy estate under 11 U.S.C. § 541;**3**

_____

**1** On October 8 of the following year, the petition was converted to one for reorganization under Chapter 7.

**2** The parties have stipulated that, for purposes of this lawsuit, the actions of any of the defendants--Rose, Material Delivery, or Mechanicsville--may be deemed the actions of all the others. For ease of reference, we shall refer to the three defendants as "Material Delivery."

**3** Section 541(a) provides, in pertinent part, that the "estate is comprised of all the following property, wherever located and by whomever held: . . . all legal and equitable interests of the debtor in property as of the commencement of the case."

that under 11 U.S.C. § 548(a)[4] the Trustee could avoid the transfer of the sand to Material Delivery because the sand had a production cost of $189,069.93 (and a market value much greater than that) but was transferred to Material Delivery for only a few thousand dollars; and that, under 11 U.S.C. §§ 542(a)[5] and 550(a),[6] the Trustee was therefore entitled to receive the sum of $189,069.93 from Material Delivery.

After the Bankruptcy Court refused to amend its judgment, Material Delivery filed the instant appeal in the United States District Court for the Eastern District of Virginia. In an opinion issued on May 11, 1995, the District Court reversed the judgment of the Bankruptcy Court and entered judgment in favor of Material Delivery. The

---

[4] Section 548 provides, in pertinent part:

> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

\* \* \* \*

> (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation
> . . . .

[5] Section 542(a) provides that, with exceptions that the Bankruptcy Court deemed inapplicable here,

> an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

[6] Section 550(a) provides that, when a transfer is avoided pursuant to 11 U.S.C. § 548, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from the initial transferee of such transfer . . . ."

6

District Court determined that, under the terms of its contract with M & M, Tidewater obtained title to mined sand only upon removing the sand from the property; until the sand was carried off of the site, title remained with M & M. The court therefore held that the 93,000 tons of mined sand were owned by M & M when Tidewater transferred its interests under the lease to Material Delivery, and so could not be treated as part of the bankruptcy estate.

The Trustee has appealed, contending that the District Court erred when it determined that Tidewater did not own the mined but unremoved sand at the time of the sale to Material Delivery.[7] Material Delivery has cross-appealed, arguing that the Trustee's claim is barred by the applicable statute of limitations.

II.

Material Delivery has raised a statute of limitations concern that both the Bankruptcy Court and the District Court rejected: both courts concluded that, under the applicable statutes and case law, a two-year statute of limitations governed cases such as this, the two-year period began to run upon the appointment of a trustee, and the Trustee in the case at bar filed his action well within that two-year time period.

Under the version of 11 U.S.C. § 546(a) in effect when the instant case was commenced,[8] the statute of limitations for actions brought

---

[7] The Trustee has also argued that, even if Tidewater did not own the sand, the District Court should have held that the value of the right to remove the sand was equal to the value of the sand itself. The materials submitted to us suggest that the Trustee failed to present that argument to the courts below. "As this court has repeatedly held, issues raised for the first time on appeal generally will not be considered," unless it appears that "refusal to consider the newly raised issue would be plain error or would result in a fundamental miscarriage of justice." Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993); accord Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 665 (4th Cir.), cert. denied, ___ U.S. ___, 114 S. Ct. 443 (1993); National Wildlife Fed'n v. Hanson, 859 F.2d 313, 318 (4th Cir. 1988). Having concluded that such exceptional circumstances are not present here, we hold that the Trustee has waived this argument on appeal.

[8] Section 546(a) was amended on October 22, 1994. See Bankruptcy Reform Act of 1994, § 216, Pub. L. No. 103-394, 108 Stat. 4126-27 (codified as amended at 11 U.S.C. § 546(a) (Supp. 1996)).

7

under sections 544, 545, 547, 548 and 553 expired"after the earlier of two years after the appointment of a trustee . . . or the time the case [wa]s closed or dismissed." In In re Maxway Corp., 27 F.3d 980 (4th Cir.), cert. denied, ___ U.S. #6D6D 6D#, 115 S. Ct. 580 (1994), we confirmed what the language of the statute clearly indicated--that an action brought under section 547 was barred if it had not been filed within two years of the time a trustee was appointed or before the case was closed or dismissed, whichever was earlier. Id . at 982-85. Material Delivery has asked us either to reconsider the wisdom of that decision or to declare a more stringent rule for actions brought pursuant to section 548(a). Once again finding the statutory language clear on its face, see id. at 982-83, we decline Material Delivery's invitation.

The Trustee in the case at bar was appointed on October 8, 1992; he filed the instant action on April 25, 1994. The Trustee's claim was therefore timely filed.

III.

The Trustee has argued that, under the common law of Virginia, when a lessee has been granted mineral-mining rights by a lessor, the minerals become the property of the lessee once the minerals have been mined. When properly construed, the Trustee has argued, the lease in the case at bar is silent with respect to the ownership of unremoved mined sand. He therefore believes that the common law rule applies and that Tidewater was the owner of the pile of sand at the time it transferred its interests to Material Delivery.

In Bostic v. Bostic, 99 S.E.2d 591 (Va. 1957), the Supreme Court of Appeals of Virginia stated that, when a party is granted the right to harvest such things as rock, coal, and timber from the grantor's land, but title in the land itself is not passed to the grantee, then the grantee obtains title to the rock, coal, or timber when it is mined, cut, or otherwise severed from the land. Id. at 595-97 (citing several cases). As a general matter, therefore, it appears clear that--absent an agreement to the contrary--Tidewater would ordinarily have obtained title to the sand upon removing it from the earth, regardless of whether the sand had yet been loaded into trucks and carried off to other locations. The Bostic court gave no indication, however, that the common law rule could not in fact be abrogated by contract. Indeed,

8

underlying much of the <u>Bostic</u> court's reasoning is a clear desire to carry out the usual intent of contracting parties.

The question in the instant case is therefore this: Did the contract entered into by Tidewater and M & M provide, either explicitly or implicitly, that Tidewater would obtain title to mined sand only upon removing it from the site? If the answer to that question is Yes, then the rule acknowledged in <u>Bostic</u> is irrelevant and we must enforce the intent of the contracting parties. If the answer is instead No, then the mined sand must be treated as part of Tidewater's bankruptcy estate.

The Bankruptcy Court's determination of the parties' intent is a factual finding that may be set aside on appeal only if it is clearly erroneous. <u>See</u> Bankr. Rule 8013, 11 U.S.C. "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 395 (1948).

We have concluded that the Bankruptcy Court committed clear error. The lease agreement does not expressly state precisely at what point the parties intended title in the sand to vest in Tidewater. Three components of the agreement indicate, however, that the common law rule articulated in <u>Bostic</u> was abrogated by the parties and that title in the sand was to remain with M & M until Tidewater carried the sand off the site.

First, Tidewater was only required to pay rent to M & M if it removed sand from the premises. If sand were mined and then simply left piled up on the premises--as much of it, in fact, was--no compensation was owed to M & M. That seems clearly to indicate that title in the mined sand was intended to remain with M & M until Tidewater carried it away.

Second, M & M expressly reserved to itself "the right to remove borrow material from the site." Tidewater, in fact, agreed "to make available such material to [M & M] upon request" and promised to accommodate M & M's operations at the site. The parties also agreed that M & M would not be required to pay Tidewater for any material it removed from the site. Because sand--whether mined by

9

Tidewater or not--could be taken away by M & M at any time, without paying any compensation to Tidewater, it is apparent that title in the sand was to remain with M & M until Tidewater removed it from the premises.

Third, if either party terminated the lease, Tidewater was to have only 120 days to remove sand from the premises pursuant to existing contracts. Underlying that provision is a presumption that all sand not removed by Tidewater within that time period--whether already mined or not--was the property of M & M.

We therefore hold that the District Court correctly set aside the Bankruptcy Court's findings and concluded that the 93,000 tons of sand sitting on M & M's property when Tidewater transferred its interests to Material Delivery were not owned by Tidewater, and so could not properly be regarded as a recoverable component of the bankruptcy estate.[9]

The decision of the District Court is accordingly

AFFIRMED.

_____

[9] The Trustee believes that M & M's actions suggested that it believed Tidewater owned unremoved mined sand: even though the contract with Material Delivery stated that Material Delivery was obtaining Tidewater's interest in "[a]ny finished sand" located on the site, M & M did not object to that clause when it sent Tidewater the January 1992 letter objecting to Tidewater's reportedly continuing activity at the site. We find that argument unpersuasive. First, the Trustee has not demonstrated that M & M officials were familiar with the details of Tidewater's contract with Material Delivery. Second, even if M & M officials were familiar with the clause referring to "[a]ny finished sand," they might very well have assumed that Tidewater was only transferring its right to remove the sand, rather than attempting to convey title that it did not yet possess.

10