In re HARRY LEVIN, INC. t/a
Levin's Furniture, Debtor.

Andrew N. SCHWARTZ,
Trustee, Plaintiff,

v.

Peter J. KURSMAN, Defendant.

Andrew N. SCHWARTZ,
Trustee, Plaintiff,

v.

JETRONIC INDUSTRIES,
INC., Defendant.

Bankruptcy No. 92–10517F.
Adv. Nos. 94–0451F, 94–0452F.

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 5, 1994.

Leonard P. Goldberger, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, PA, for trustee.

Alan C. Kessler, Stuart M. Brown, Mark A. Polemeni, Robert Eyre, Buchanan Ingersoll P.C., Philadelphia, PA, for defendants Peter J. Kursman and Jetronic Industries, Inc.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

Andrew Schwartz, the chapter 7 trustee of Harry Levin, Inc., t/a Levin's Furniture, has commenced two separate adversary proceedings. The first, Adv. No. 94–0451, has

named Peter J. Kursman as the sole defendant, while the second, Adv. No. 94–0452, names Jetronic Industries, Inc. as the sole defendant. Both proceedings were filed on June 3, 1994.

As will be discussed below, the complaints in both proceedings assert somewhat similar causes of action. In addition, Mr. Kursman is alleged to be an officer and director of Jetronic as well as the former president of the debtor. Mr. Kursman and Jetronic have retained the same counsel to defend them.

Before me now are almost identical motions in both proceedings, seeking to dismiss each proceeding or seeking more detailed complaints. A joint hearing has been held, and the parties were afforded the opportunity to argue their respective positions and submit memoranda. Given the overlap of issues, I shall resolve these two motions with separate orders accompanying this single memorandum opinion.

## I.

This bankruptcy case originally began as an involuntary chapter 7 bankruptcy filing on January 29, 1992. 11 U.S.C. § 303. On March 5, 1992, I entered an uncontested order for relief, and at the debtor's request converted this case to one under chapter 11. On June 11, 1992, this case was converted back to one proceeding under chapter 7.

Pursuant to 11 U.S.C. § 701(a)(1), the United States trustee then appointed Stephen Raslavich, Esq. (now a bankruptcy judge) as the interim chapter 7 trustee. A meeting of creditors was thereafter held on July 16, 1992, and no trustee was elected. As a result, Mr. Raslavich then became the permanent chapter 7 trustee under section 702(d).

The law firm of Silberman, Markovitz & Raslavich was approved as counsel to the permanent chapter 7 trustee by order dated August 13, 1992. On November 4, 1993, Andrew Schwartz, Esq. was appointed successor chapter 7 trustee. He has retained the same counsel. (However, he received permission to employ special counsel to prosecute this particular litigation.)

On June 3, 1994, the successor trustee, through his special counsel, commenced the two above-captioned adversary proceedings. These two complaints, with the factual averments, may be summarized as follows.

## A.

The lawsuit against Mr. Kursman alleges that he was the president of the debtor prior to the involuntary bankruptcy filing. The trustee also asserts that the debtor is a wholly owned subsidiary of Jetronic. In his capacity as president of the debtor, the trustee asserts that Mr. Kursman "manipulate[d], use[d] and enjoy[ed] Levin's assets for his personal benefit," "charged various personal expenses to Levin's" and received an "excessive" salary from Levin's in light of "management fees" charged to the debtor by Jetronic. Complaint, ¶¶ 4–6.

In count I of the complaint, the trustee asserts that Mr. Kursman received, within two years of the debtor's bankruptcy filing, a transfer of the debtor's interest in property, which transfer constituted a fraudulent conveyance under section 548 of the Bankruptcy Code and also under Pennsylvania law, 39 Pa.S.A. §§ 351 et seq. In count II of the complaint, the trustee asserts that Mr. Kursman "intentionally and willfully breached his fiduciary duties to Levin's and its creditors." Complaint, ¶ 15. In Count III, the trustee asserts that "Kursman received a benefit from the use and transfer of Levin's assets for which it would be unconscionable, inequitable and unjust for it to retain." Count IV asserts that Kursman is obligated under section 542 of the Code to return to the trustee all property of the debtor in Kursman's possession. In Count V, the trustee alleges that Kursman "converted" the debtor's property for his own use and enjoyment.

As the relief sought in all of these counts, the trustee demands monetary damages, and/or a return of the property allegedly transferred, and/or an accounting, along with attorney's fees and costs. And finally, in Count VI, the trustee maintains that "Kursman's acts and conduct were outrageous, willful, malicious, vexation [sic] [and] fraudulent," thereby entitling the debtor's estate to recover punitive damages.

### B.

The complaint against Jetronic alleges that the debtor was a wholly owned subsidiary of the defendant and that the debtor "was controlled by Jetronic through their common officers and directors." Complaint, ¶ 3. Further, Jetronic allegedly "used its position of control over Levin's to manipulate, use and enjoy Levin's assets." Complaint, ¶ 5.

The trustee maintains that Jetronic borrowed "at least $880,000.00" which was unpaid, and charged the debtor an excessive "management fee" of $1,030,200.00. Complaint, ¶¶ 7–8. Count I of the complaint asserts a fraudulent conveyance claim under both bankruptcy law, section 548, and Pennsylvania law, 39 Pa.S.A. §§ 351 *et seq.*, involving the alleged transfer of the debtor's interest in property. Count II asserts that the debtor made preferential payments to Jetronic within the meaning of section 547. Count III asserts a breach of contract action with respect to the allegedly unpaid loans owed to the debtor. Count IV asserts an unjust enrichment in connection with the alleged transfer of assets from the debtor to Jetronic. In count V, the trustee demands the return of all of the debtor's property transferred to Jetronic, pursuant to section 542. In count VI, the trustee claims that Jetronic converted "various property of Levin's and the proceeds therefrom."

As with the complaint against Mr. Kursman, the relief sought in these six counts includes monetary damages, and/or a return of the property allegedly transferred, and/or an accounting, along with attorney's fees and costs. In count VII, the trustee demands punitive damages for actions taken by the defendant which he considers "outrageous, willful, malicious, vexation [sic] [and] fraudulent."

In response to these two complaints, the defendants have filed the instant motions.

Defendant Jetronic requests that the claims against it found in counts I, II, and VI—for fraudulent conveyance, preference and conversion—be dismissed due to the bar of the statute of limitations. Similarly, defendant Kursman seeks dismissal for limitations reasons as to counts I and V—*viz.*, fraudulent conveyance and conversion. The defendants seek dismissal as to all counts in both complaints for their alleged failure to state a cause of action. Fed.R.Civ.P. 12(b)(6) (incorporated by Fed.R.Bankr.P. 7012).

Both defendants further assert that count I of their respective complaints—the fraudulent conveyance claim—must be dismissed due to the trustee's failure to provide the specificity of pleading required by Fed. R.Bankr.P. 7009—which incorporates Fed. R.Civ.P. 9(b). They also maintain that the trustee has failed to state any entitlement to counsel fees.

Alternatively, both defendants contend that, if the complaints are not dismissed, then the trustee should be directed to file a more definite statement of allegations and claims against them, pursuant to Fed. R.Bankr.P. 7012, incorporating Fed.R.Civ.P. 12(e), because the allegations are too "vague and ambiguous" to enable them to answer the trustee's complaints.

### II.

I turn first to defendants' request under Rule 12(b)(6) for dismissal for failure to state a claim or, alternatively, under Rule 12(e) for a more definite statement.

### A.

In considering a Rule 12(b)(6) motion, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). I must also accept as true all of the well-pleaded facts alleged in the complaint and any reasonable inferences therefrom. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson; Colburn v. Upper Darby Twp.,* 838 F.2d 663, 665 (3d Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989); *In re Marceca,* 129 B.R. 371 (Bankr.S.D.N.Y.1991); J. Moore, 2A *Moore's Federal Practice,* ¶ 12.07[2.–5], at 12–84 (2d ed. 1994). The movant bears the burden of demonstrating that no claim has been stated.

*See Johnsrud v. Carter,* 620 F.2d 29 (3d Cir.1980).

◼ A court's discretion to dismiss a complaint without leave to amend is restricted by Fed.R.Civ.P. 15(a), which directs that leave to amend shall be freely given when justice so requires. *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir.1991). *See also* J. Moore, 3 *Moore's Federal Practice,* ¶ 15.08[4] (2d ed. 1994). And, as stated by that treatise:

> If a motion under Rule 12(b)(6) is granted, ordinarily an opportunity to amend should be fully granted if the deficiencies in the complaint can be corrected by amendment.

J. Moore, 2A *Moore's Federal Practice,* ¶ 12.07[2.–5], at 12–99 (2d ed. 1994) (footnote omitted).

◼ Where repleading could not correct the defects in a party's claim, a court should not grant leave to amend. *Accord, e.g., Peterson v. Philadelphia Stock Exchange,* 717 F.Supp. 332, 337 (E.D.Pa.1989). *See generally Mosler v. M/K Ventures Intern. Inc.,* 103 F.R.D. 385 (N.D.Ill.1984). *See also Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.1983); *Sarfaty v. Nowak,* 369 F.2d 256, 259 (7th Cir.1966), *cert. denied,* 387 U.S. 909, 87 S.Ct. 1691, 18 L.Ed.2d 627 (1967) (Rule 15(a) does not require a court to do a futile thing).

In short, dismissal of the trustee's two complaints is appropriate only if it appears that he can prove no set of facts that will entitle him to recover on the various causes of action which he has alleged against these two defendants. However, I will grant the trustee leave to amend if one or more counts are defective but it appears possible that a claim could be restated upon repleading. Otherwise, I shall simply dismiss the trustee's complaints.

## B.

◼ A Rule 12(e) motion for a more definite statement is appropriate only "if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." As explained by a leading commentator:

> With the exception of allegations of fraud and mistake, there is no requirement in the rules that pleading be particular. As amended in 1946, the Rule is plainly designed to strike at unintelligibility rather than want of detail. If a pleading meets the requirements of Rule 8 and fairly notifies the opposing party of the nature of the claim, a motion for a more definite statement will not be granted.

J. Moore, 2A *Moore's Federal Practice,* ¶ 12.18[1], at 12–161 to 12–163 (2d ed. 1994) (footnotes omitted); *accord, e.g., Schaedler v. Reading Eagle Publication, Inc.,* 370 F.2d 795, 798 (3d Cir.1967) ("[a Rule 12(e) motion] is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading").

◼ Rule 8(a) directs that a complaint simply contain "a short and plain statement of the claim showing that the pleader is entitled to relief ... and a demand for judgment for the relief" sought. Given this pleading standard, along with the ability of a defendant to obtain detailed information about an asserted cause of action through discovery, as a general principle a motion for a more definite statement "is not favored. In particular, a motion for a more definite statement should not be granted to require evidentiary detail that is properly sought through discovery...." J. Moore, 2A *Moore's Federal Practice,* ¶ 12.18[1], at 12–171 (2d ed. 1994); *accord, e.g., In re Noroton Heights Enterprises Corp.,* 96 B.R. 11, 15 (Bankr.D.Conn.1989); *In re American Intern. Airways, Inc.,* 66 B.R. 642, 645 (Bankr. E.D.Pa.1986).

◼ While Rule 12(e) motions are usually denied, they are appropriate "when the pleading is wholly uninformative as to the basis of the claim...." J. Moore, 2A *Moore's Federal Practice,* ¶ 12.18[1], at 12–173. Indeed,

> [d]epending upon the type of action, and the available defenses, certain information may be deemed necessary for forming a response. Thus, transaction dates have sometimes been required on the ground that without them the defendant cannot tell whether to plead the statute of limita-

tions, though it has also been held that the defendant should simply plead the statute and then discover the dates through the normal discovery procedures.

*Id.*, at 12–173 to 12–174 (footnotes omitted); *see In re Lee Way Holding Co.*, 105 B.R. 404, 417 (Bankr.S.D.Ohio 1989).

### C.

█ Fed.R.Bankr.P. 7009, made applicable to all adversary proceedings, simply incorporates Fed.R.Civ.P. 9. Rule 9(b) states:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge or other condition of mind of a person may be averred generally.

Thus, claims of fraud require a greater particularity of pleading than do other types of claims raised in federal courts.

█ However, the factual detail that need be alleged in a fraud count is also tempered by the overall themes of simplicity and conciseness permeating the modern federal pleading system. In construing Fed. R.Civ.P. 9(b),[1] one treatise on federal practice explained:

In order to satisfy Rule (9)(b), allegations of fraud must give the opposing party reasonable notice of the claim, and contain sufficient information to allow that party to respond.

J. Moore, 2A *Moore's Federal Practice,* ¶ 9.03[1] at 9–23 (2d ed. 1994) (footnote omitted). The Third Circuit Court of Appeals expanded upon this general requirement:

Fed.R.Civ.P. 9(b) requires plaintiffs to plead the circumstances of the alleged fraud with particularity to ensure that defendants are placed on notice of the 'precise misconduct with which they are charged, and to safeguard defendants against spurious charges' of fraud.... The first sentence of Rule 9(b) requires the identification of the elements of the fraud claim.... Nonetheless, focusing exclusively on the particularity requirement

is 'too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'

*Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628, 645 (3d Cir.1989) (quoting, respectively, *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985) and Wright & Miller, 5 *Federal Practice and Procedure,* § 1298, at 407 (1969)) (citation omitted).

█ Indeed, in *Seville,* the Court of Appeals noted further that "allegations of 'date, place or time' fulfills these [particularity] functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." 742 F.2d at 791. In an earlier decision, it explained:

In applying the first sentence of Rule 9(b) courts must be sensitive to the fact that its application, prior to discovery, may permit sophisticated defrauders to successfully conceal the details of their fraud. Moreover, in applying the rule, focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'

*Christidis v. First Pennsylvania Mortg. Trust,* 717 F.2d 96, 99–100 (3d Cir.1983), *quoting* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1298, at 407 (1969).

█ This "flexibility" of approach to the particularity requirement has been viewed as especially applicable to fraud claims raised by a statutory bankruptcy trustee.

When a trustee in bankruptcy pleads a claim of fraud, cases have held the Rule 9(b) requirement of particularity is relaxed. A persuasive reason to permit this relaxation is the trustee's inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party.

---

1. Since Rule 7009 incorporates Rule 9, decisions construing Fed.R.Civ.P. 9(b) are relevant to an interpretation of Rule 7009.

L. King, 9 *Collier on Bankruptcy*, ¶ 7009.05, at 7009–5 (15th ed. 1994) (footnotes omitted); *accord, e.g., Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 498 (N.D.Ill.1988); *In re American Spring Bed Mfg. Co.*, 153 B.R. 365, 374 (Bankr.D.Mass.1993); *In re Hunt*, 136 B.R. 437, 452 (Bankr.N.D.Tex.1991).

### D.

In these two adversary proceedings, the defendants contend that the trustee's two complaints are so vague and ambiguous that they cannot determine the facts upon which the trustee relies and whether such facts, if proven, would entitle the trustee to relief on any of the claims he has asserted.

Before applying the pleading principles of Rule 8 (and later, Rule 9) to these complaints, I must disagree with a general assertion made by defendants. They contend that if the bankruptcy trustee asserts a cause of action under Pennsylvania law,—*i.e.*, conversion—then he must comply with Pennsylvania pleading requirements (which are more specific than those required by federal procedure). *See* Defendant Jetronic's Memorandum, at 18.

■■■ Although state law may define some of the substantive causes of action in these two adversary proceedings, it is federal procedure that determines the adequacy of pleading in this federal court. *See Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Thus, when considering the sufficiency of a bankruptcy proceeding raising a state law claim of defamation, the Second Circuit Court of Appeals explained:

> Although charges of libel and slander under former practice were considered largely vexatious and their litigation discouraged by requirements that such contentions be set forth in considerable detail, ... the federal rules do not require special pleading.... Accordingly, the mode of pleading defamation is governed by Rule 8, Fed.R.Civ.P., which requires only that plaintiff's charges be set forth in a short and concise statement, detailed only to the extent necessary to enable defendant to respond and to raise the defense of res judicata if appropriate.

*Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir.1980). *See Linker v. Custom–Bilt Machinery Inc.*, 594 F.Supp. 894, 899–900 (E.D.Pa.1984); *Karr v. Township of Lower Merion*, 582 F.Supp. 410, 413 (E.D.Pa.1983); *Zerpol Corp. v. DMP Corp.*, 561 F.Supp. 404, 412 (E.D.Pa.1983) (*quoting Geisler v. Petrocelli*, 616 F.2d at 639–640, but nonetheless granting defendant's motion to dismiss the amended complaint for failure to state a claim). All that the plaintiff must plead are allegations of his claims sufficient for the defendant to answer. *E.g., Geisler v. Petrocelli*, 616 F.2d at 640.

### III.

### A.

I now consider the specific counts in the trustee's complaint against Mr. Kursman.

■■■ In count I, the trustee asserts that the defendant received fraudulent conveyances in the sense of both actual fraud, section 548(a)(1), and constructive fraud, section 548(a)(2). The trustee also claims that these transfers were fraudulent within the meaning of state law.

The facts alleged in connection with this count are as follows: that the transfers occurred within two years of Levin's bankruptcy filing; that the defendant used his position as president of Levin and as a director of its sole shareholder to use the debtor's assets for his own personal benefit and to pay his own personal debts; and that he received an "excessive" salary.

Obviously, the trustee is not averring precisely when these alleged transfers of assets occurred, or how much of the debtor's assets were allegedly diverted to Mr. Kursman. However, if the defendant did misuse the debtor's assets for his own benefit and to pay his own expenses, such conduct could be considered fraudulent. *See, e.g., In re Major Funding Corp.*, 126 B.R. 504 (Bankr.S.D.Texas 1990); *In re South Florida Title, Inc.*, 104 B.R. 489 (Bankr.S.D.Fla. 1989). In addition, there is enough detail provided in this complaint to enable the defendant to respond thereto, and to obtain further information through discovery. *See In re Hollis and Co.*, 86 B.R. 152, 156–57

(Bankr.E.D.Ark.1988); *see also In re Rave Communications, Inc.,* 138 B.R. 390, 395–97 (Bankr.S.D.N.Y.1992).

Similarly, if Mr. Kursman used the debtor's assets for his own benefit or expenses, or caused the debtor to pay him an excessive salary, such conduct could be viewed as a breach of his fiduciary duties to the debtor corporation and its creditors under count II. *See, e.g., Voest–Alpine Trading USA v. Vantage Steel Corp.,* 919 F.2d 206, 209 & 217 n. 25 (3d Cir.1990) (under Pennsylvania law, individuals "breached their fiduciary duty owing to [the corporation] and thus to [the corporation's] creditors when they participated in the fraudulent conveyance of [the corporation's] assets ... for less than full consideration" while the corporation was insolvent); *Brown v. Presbyterian Ministers Fund,* 484 F.2d 998, 1005 (3d Cir.1973) ("[a]s an officer, director, and principal stockholder of an insolvent corporation ... [the defendant] was duty bound to act 'with absolute fidelity to both creditors and stockholders' "); *Sicardi v. Keystone Oil Co.,* 149 Pa. 148, 24 A. 163, 164 (1892).

It also follows that the defendant's wrongful use or receipt of assets of the debtor prepetition could be considered a conversion of the debtor's assets, *see In re Major Funding Corp.,* and depending upon the property transferred and who presently has possession of it, might justify turnover under section 542. *See In re National Equipment & Mold Corp.,* 64 B.R. 239 (Bankr.N.D.Ohio 1986); *cf. United States v. Whiting Pools, Inc.,* 674 F.2d 144, 155 (2d Cir.1982) ("if § 542 did not authorize compelling turnovers by secured creditors in possession, apparently its only use would be to authorize obtaining property from persons in wrongful possession following theft or conversion"), *aff'd,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Further, the payment of an excessive salary may be considered unjust enrichment under Pennsylvania law. *Cf. CST, Inc. v. Mark,* 360 Pa.Super. 303, 520 A.2d 469, *appeal denied,* 517 Pa. 630, 539 A.2d 811 (1987) (discussing a corporate officer's duty of "undivided loyalty" to the corporation).

While I acknowledge that the factual averments found in paragraphs 4 through 6 of the trustee's complaint are sparse, they provide enough detail to enable the defendant to respond to the allegations and, if proven, to entitle the trustee to some relief. Accordingly, the defendant's motions under Rule 7012 (Rules 12(b)(6) and 12(e)) and Rule 7009 are denied—with one exception.

■■■■■ As a general principle, under Pennsylvania law, "there is no independent cause of action for punitive damages." *Elliott v. State Farm Mut. Auto. Ins. Co.,* 786 F.Supp. 487, 491 (E.D.Pa.1992); *accord Brennen v. National Tel. Directory Corp.,* 850 F.Supp. 331, 346 (E.D.Pa.1994). Thus, the defendant is correct that a separate cause of action for punitive damages under the trustee's state law causes of action is inappropriate. Further, under Fed. R.Bankr.P. 7009, punitive damages are not "special damages" and need not be "specifically stated" under Rule 9(g). *See, e.g., Southern Pacific Transportation Co. v. Builders Transp., Inc.,* 1993 WL 232058, 1993 U.S.Dist. Lexis 8644 (E.D.La.1993). However, the plaintiff's complaint should "allege facts sufficient to put the other party on notice of a claim for punitive damages." *Id.,* 1993 WL 232058 at *4; *In re Landbank Equity Corp.,* 83 B.R. 362, 376–77 (E.D.Va. 1987).

Accordingly, count VI will be dismissed, but with leave for the plaintiff to amend his complaint to include allegations that would place the defendant on notice that he is seeking exemplary damages as to particular counts. *Southern Pacific Transportation Co. v. Builders Transp., Inc.,* 1993 WL 232058 at *4; *Brennen v. National Tel. Directory Corp.,* 850 F.Supp. at 347.

### B.

■■■■ The facts asserted by the trustee in his complaint against Jetronic are as follows. He contends that Jetronic owned all of the stock of the debtor, used the debtor's assets (presumably for the defendant's own benefit), borrowed money from the debtor, and charged the debtor an "excessive" management fee.

Insofar as the fraudulent conveyance, unjust enrichment, turnover, conversion, and

punitive damage counts are concerned, my analysis tracks that just set forth concerning Mr. Kursman. The causes of action and facts alleged are provided with sufficient detail under the federal pleading system.

█ Count II contends that the debtor owed Jetronic a prepetition debt, and that preferential payments were made by the debtor on this debt. While the specific transfers are not articulated, this information is discoverable. Similarly, count III, asserting breach of contract, obviously is predicated upon the alleged failure of Jetronic to repay the debtor for sums borrowed. This count is also sufficiently pled. *See Brown v. Peoples Sec. Ins.*, 158 F.R.D. 350 (E.D.Pa. 1994) ("Rule 8(a) of the Federal Rules of Civil Procedure requires that '[a] pleading which sets forth a claim for relief ... contain ... a short and plain statement of the claim showing that the pleader is entitled to relief....' Rule 8(a) imposes no requirement that the pleading state facts sufficient to constitute a cause of action"), *quoting Schaedler v. Reading Eagle Publication, Inc.*, 370 F.2d at 798. And both counts, if proven, could provide the trustee with some relief.

Accordingly, only the punitive damages count will be dismissed, but with leave to amend on the same terms as outlined in the Kursman discussion.

## IV.

Finally, I turn to the defendants' assertion that certain counts are barred by the appropriate statutes of limitations.[2] There are two distinct sources of limitations for the various claims raised in these complaints: sections 108(a) and 546(a) of the Bankruptcy Code.

### A.

█ As to the trustee's assertion of claims which arise prepetition from state law—*i.e.*, conversion and fraudulent conveyance[3]—and which were a component of the debtor's estate at the time of its bankruptcy filing, *see generally Kalb, Voorhis & Co. v. American Financial Corp.*, 8 F.3d 130, 132 (2nd Cir.1993), section 108(a) of the Code establishes the relevant limitations. *Accord, e.g., Ambrose Branch Coal Co. v. Tankersley*, 106 B.R. 462 (W.D.Va.1989); *see* L. King, 2 *Collier on Bankruptcy*, ¶ 108.02, at 108–7 (15th ed. 1994) ("section 108(a) applies only to causes of action which the debtor possesses on the date of the order for relief and not those which arise or are acquired by the trustee thereafter"). That subsection states:

If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

> (2) two years after the order for relief.[4]

---

**2.** Although the issue of limitations is an affirmative defense (and so arguably falls without the Rule 12(b)(6) standard), modern federal pleading practice accepts that the defendants' limitations defense can be addressed by a Rule 12(b)(6) motion to dismiss, rather than by a motion for judgment on the pleadings under Rule 12(c) (raised after defendants file their answers asserting this affirmative defense). *Accord* J. Moore, 2A *Moore's Federal Practice*, ¶ 12.10, at 12–117 (2d ed. 1994) ("it is now held that the defense of limitations may be raised by motion to dismiss when the time alleged in the complaint shows that the action was not brought within the statutory period") (footnote omitted); *see, e.g., In re Coastal Group, Inc.*, 13 F.3d 81, 83 (3d Cir.1994) (limitations issue raised and considered by a motion to dismiss under Fed.R.Bankr.P. 7012(b)).

**3.** Since the trustee expressly relies only upon the Pennsylvania version of the Uniform Fraudulent Conveyance Act, along with section 548 of the Code, I need not consider whether claims arising under section 544 of the Code fall within section 108(a). *See generally In re Hansen*, 114 B.R. 927 (Bankr.N.D.Ohio 1990).

**4.** The legislative history surrounding section 301 of the Code explains the use of the phrase "order for relief":

The section [301] contains no change from current law, except for the use of the phrase "order for relief" instead of "adjudication." The term adjudication is replaced by a less pejorative phrase in light of the clear power of Congress to permit voluntary bankruptcy without the necessity for an adjudication....

Accordingly, "[i]n his role as successor to the [prepetition] debtor, the trustee is afforded the longer of the state statute of limitations, including its tolling provisions, or two years after the order for relief." *Matter of LaJet, Inc.*, 150 B.R. 648, 655 (Bankr.E.D.La. 1993).

As noted *supra*, on March 5, 1992 I entered an order for relief pursuant to section 303(h) in connection with the involuntary petition raised against the debtor. These two proceedings were initiated on June 3, 1994— more than two years after the order for relief was entered.

While this bankruptcy case was converted twice—first to chapter 11 and then back to chapter 7—section 348(a) details the effect of such conversion on the order for relief:

> Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

Since conversion does not "effect a change in the date of ... the order for relief", the two year limitations period found in section 108(a)(2) is not extended or affected by the conversion of this case. *E.g., Matter of Phillip*, 948 F.2d 985, 988 (5th Cir.1991); *In re Southern Intern. Co., Inc.*, 159 B.R. 192 (Bankr.E.D.Va.1993); *In re Coin Phones, Inc.*, 153 B.R. 135, 142 (Bankr.S.D.N.Y.1993) ("In a case that begins as a case under Chapter 11 and then is converted to Chapter 7, the two-year period [of section 108(a)(2) ] begins running from the date the order for relief is entered in the Chapter 11 case"); *Matter of LaJet, Inc.*, 150 B.R. at 655.

As just noted, these complaints were filed more than two years after the order for relief. Thus, the trustee's assertion of pre-petition causes of action against the defendants would be untimely under the provisions of section 108(a)(2). *See Matter of LaJet, Inc.* Accordingly, unless the limitations period under state law would have permitted the debtor to assert a claim more than two years beyond the date of the involuntary petition, the trustee's state law claims would be time barred. 11 U.S.C. § 108(a)(1); *see id.*

The defendants argue that Pennsylvania law establishes a two year limitations period for two of the trustee's state law causes of action. Specifically, they maintain that 42 Pa.C.S.A. §§ 5524(2), 5524(3) and 5524(7) create two year limitations periods for claims of conversion and fraudulent conveyance. *See, e.g., Menichini v. Grant*, 995 F.2d 1224 (3d Cir.1993); *In re Shields*, 148 B.R. 783 (Bankr.E.D.Pa.1993).

While the complaints do not specify the dates of the alleged events upon which these causes of action arose, the complaints do make clear that these events occurred prior to the involuntary bankruptcy filing. Since these complaints were filed more than two years after that filing, the defendants argue that the Pennsylvania limitations period certainly expired as to these claims.

Surprisingly, the trustee does not discuss section 108(a)(1) in his memorandum in opposition to defendants' motion.[5] Nonetheless, it does not appear that he concedes that these two claims are time barred.

For the following reason, I find it inappropriate to now determine, in connection with a motion to dismiss, whether the state law limitations period had expired as of the date the trustee filed these two proceedings. *Sisseton–Wahpeton Sioux Tribe v. U.S.*, 895 F.2d 588, 591 (9th Cir.), *cert. denied*, 498 U.S. 824, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990):

> where the issue of limitations requires a determination of when a claim began to accrue, the complaint should be dismissed only if the evidence is so clear that there is

---

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 321 (1977) 1978 U.S.Code Cong. & Admin. News 5787, 6277.

**5.** As I construe his memorandum, the trustee addresses only the limitations issues under section 546, citing decisions such as *In re Nelson,*

167 B.R. 1018 (Bankr.E.D.Pa.1994) and *In re Colonial Realty Co.*, 168 B.R. 512, 516–17 (Bankr.D.Conn.1994) (limitations questions under section 108 held irrelevant). Section 546, as it applies to these proceedings, is analyzed *infra*.

no genuine factual issue and the determination can be made as a matter of law. *Accord Askanase v. Fatjo,* 1993 WL 76907 *2, 1993 U.S.Dist.Lexis 19392, *11 (S.D.Tex. 1993).

As maintained by the trustee, both defendants are alleged to have taken for their own use property belonging to the debtor without fair consideration. Further, defendant Jetronic is claimed to be the debtor's sole shareholder, and defendant Kursman is claimed to be the debtor's former president and an officer and director of Jetronic.

Although not mentioned by either party, Pennsylvania law probably would incorporate common law tolling principles into its limitations periods for claims of conversion or fraudulent conveyance. Specifically, state law may toll the limitations period as to prepetition claims by a corporation against those who control it. *Resolution Trust Corp. v. Farmer,* 865 F.Supp. 1143 (E.D.Pa.1994).[6] The equitable principle most germane to these proceedings has been referred to as the tolling doctrine of "adverse domination," which was recently described as follows:

> Under the doctrine of adverse domination, the statute of limitations is tolled for as long as a corporate plaintiff is controlled by the alleged wrongdoers.... The doctrine is based on the theory that the corporation which can only act through the controlling wrongdoers cannot reasonably be expected to pursue a claim which it has against them until they are no longer in control.

*Id.,* at 1151; *accord In re Lloyd Securities, Inc.,* 153 B.R. 677, 684–85 (E.D.Pa.1993); *see*

*Askanase v. Fatjo; Saylor v. Lindsley,* 302 F.Supp. 1174, 1184 (S.D.N.Y.1969).

■ From the factual allegations made in the complaints I cannot clearly determine whether, as a matter of state law, the principle of "adverse domination" would be inapplicable in these proceedings, *see generally Resolution Trust Corp. v. Farmer,* 865 F.Supp. at 1157–58, or, if applicable, the date at which such domination ended and the two year limitations period began.[7] Were state equitable tolling principles in conflict with federal bankruptcy policies, then these state principles should not be applied. However, in light of the language of section 108(a)(1), courts have concluded that Congress intended that state common law tolling doctrines be utilized in relevant bankruptcy proceedings. *See, e.g., Ambrose Branch Coal Co., Inc. v. Tankersley.* Indeed, as will be discussed in construing section 546, the tolling of a limitations period in favor of the estate against its controlling officers or shareholders is expressly viewed as highly compatible with the policies of federal bankruptcy law. *Cf. In re Appliance Store, Inc.,* 171 B.R. 525, 527 (Bankr.W.D.Pa.1994) (discussing the potential for debtors in possession to willfully fail to prosecute certain avoidance actions).

■ Nonetheless, under Pennsylvania law, whether the tolling principle of "adverse domination" is applicable is dependent upon the facts of each case, including the corporate role of the particular defendant and the nature of the alleged wrongdoing. *See Resolution Trust Corp. v. Farmer,* 865 F.Supp. at 1157–58. In these proceedings, one can draw

---

6. The use of Pennsylvania tolling principles in construing section 108(a)(1) is appropriate. *Ambrose Branch Coal Co., Inc. v. Tankersley,* 106 B.R. 462, 465–67 (W.D.Va.1989); *Matter of La-Jet, Inc.; see Bohus v. Beloff,* 950 F.2d 919, 924 (3d Cir.1991); *Resolution Trust Corp. v. Farmer,* 865 F.Supp. at 1150.

Whether federal common law tolling principles, *see generally Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380 (3d Cir.1994) (discussing "the discovery rule" and "equitable tolling"), may be applicable in a given instance when considering section 108(a)(2) I need not now consider. If state tolling requirements under section 108(a)(1) are not met in these pro-

ceedings, then federal common law is highly unlikely to yield à different result.

In connection with the later discussion of section 546, I do conclude that federal common law tolling principles may be applicable. *See In re Bingham Systems, Inc.,* 139 B.R. 809 (Bankr. N.D.Miss.1991).

7. In other words, I leave open for future determination whether (depending upon the facts), as a matter of state law (as incorporated by section 108(a)(1)), the limitations period concerning state law claims against the controlling shareholder or officer of a chapter 11 debtor may be tolled during the period in which the shareholder or officer controls the debtor in possession.

no conclusions on these points simply from the allegations found in the two complaints.

Accordingly, as I cannot now determine that the state law limitations period clearly expired prior to June 3, 1994, the defendants' motions to dismiss the conversion and state law fraudulent conveyance counts must be denied.

## B.

Section 546(a) establishes the relevant limitations period for the trustee's claims against these two defendants under section 548, and against defendant Jetronic under section 547.[8]

At the time these proceedings were commenced, section 546(a) stated:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
>
> (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or
>
> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).[9]

In contrast to section 108(a), section 546(a) limits the time period for a trustee to use his specified bankruptcy avoiding powers and bring suit to the earlier of two years following "appointment" or the closing of the case. *See* L. King, 4 *Collier on Bankruptcy,* ¶ 546.02 (15th ed. 1994).

 A consensus has formed as to certain interpretative aspects of section 546(a)(1). For one, courts have almost uniformly held that, in chapter 7 cases, the limitations period begins to run with the election of a permanent chapter 7 trustee under section 702, rather than with the appointment of an interim chapter 7 trustee.

*Accord, e.g., In re Maxway Corp.,* 27 F.3d 980, 984 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 580, 130 L.Ed.2d 495 (1994); *In re Conco Bldg. Supplies, Inc.,* 102 B.R. 190, 191–92 (9th Cir. BAP 1989). *Contra In re Sahuaro Petroleum & Asphalt Co.,* 170 B.R. 689, 693 (C.D.Cal.1994). Although this subsection refers to the "appointment" of a trustee, and section 702 trustees are elected rather than appointed (only interim trustees under section 701 are appointed), the reference in the statute to section 702, along with the distinction in function between an interim and permanent trustee, justifies this construction. *See, e.g., In re Metro Shippers, Inc.,* 95 B.R. 366, 368–69 (Bankr.E.D.Pa. 1989).

 In addition, it is generally recognized that the appointment of a successor trustee in the same bankruptcy chapter does not result in the commencement of a new limitations period under section 546(a). *Accord, e.g., In re Lyons,* 130 B.R. 272, 276–78 (Bankr.N.D.Ill.1991); *In re Chequers, Ltd.,* 59 B.R. 177 (Bankr.W.D.Pa.1986). The limitations period begins with the "appointment" of the original trustee.

While these two interpretations of section 546(a)(1) have remained constant, another has evolved.

Section 546(a)(1) makes no express mention of a limitations period for a debtor in possession which seeks to utilize the trustee's avoiding powers by virtue of section 1107(a). Therefore, does this two year limitations period apply to a chapter 11 debtor in possession?

Under the former Bankruptcy Act, a trustee had "two years subsequent to the date of adjudication ... [to] institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Feder-

---

**8.** Since section 542 is not referred to by section 546, some courts look to state law to determine the appropriate limitations period. *E.g., In re Tidewater Sand Co.,* 174 B.R. 205, (Bankr. E.D.Va.1994). Other courts import a "reasonable time" limitation. *Curtis v. Scott,* 1994 WL 70116, 1994 U.S.Dist. Lexis 2571 (W.D.Va.1994); *In re Ridge II,* 158 B.R. 1016 (Bankr.C.D.Cal. 1993). As I read defendants' motions, they do not now raise a limitations issue as to the trustee's turnover counts.

**9.** As will be discussed below, section 546(a) has been amended by the recently enacted Bankruptcy Reform Act of 1994, H.R. 5116, Pub.L.No. 103–394. However, section 702 of the Act specifies that the amendment to section 546(a) applies only to cases commenced after the date of enactment. As this bankruptcy case began long before this effective date, I must apply the preamendment version of section 546(a).

al or State law had not expired at the time of the filing of the petition in bankruptcy...." 11 U.S.C. § 29(e) (repealed). This two year limitations period was applicable to avoidance actions by a trustee. *E.g., Herget v. Central National Bank & Trust Co. of Peoria,* 324 U.S. 4, 65 S.Ct. 505, 89 L.Ed. 656 (1945). However, there were statutory provisions in the former Bankruptcy Act which tolled this two year limitations provision during the pendency of reorganizations under chapters X and XI. 11 U.S.C. §§ 661, 791 (repealed); *accord, e.g., Liman v. Bank of Nova Scotia,* 337 F.Supp. 62 (S.D.N.Y.1971).

Against this background, and given the language of section 546(a)(1), a majority of courts have construed the two year limitations period found in section 546(a)(1) as being inapplicable to a debtor in possession during a chapter 11 reorganization (or have made that assumption). *E.g., In re Maxway Corp.,* 27 F.3d at 982; *In re Coastal Group, Inc.,* 13 F.3d 81, 83 (3d Cir.1994) ("Most courts to consider the issue have held that the word 'trustee' in § 546(a)(1) does not include 'debtor in possession' for statute of limitations purposes"); *accord* L. King, 4 *Collier on Bankruptcy,* ¶ 546.02 (15th ed. 1994).

However, in 1990, the Tenth Circuit Court of Appeals held to the contrary. In *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520, 1524 (10th Cir.1990), the court interpreted section 546(a)(1) as applicable to avoidance actions commenced by a debtor in possession. It held that the two year limitations period commences at the inception of the debtor in possession—which is at the time of the order for relief in the chapter 11 case. 11 U.S.C. § 1101. *Id.*

■ The holding of *Zilkha* has been adopted by a number of other circuit courts, including the Third Circuit Court of Appeals in *In re Coastal Group, Inc.,* 13 F.3d 81 (3d Cir.1994).[10] *Contra In re Maxway Corp.* Accordingly, based upon this instruction from the Third Circuit, section 546(a)(1), as applicable to these proceedings, expresses the congressional intent that the two year limitations period under section 546(a) begins to run as of the date a chapter 11 debtor becomes a debtor in possession.

■ As noted by my colleague Bankruptcy Judge Sigmund in *In re Nelson Co.,* 167 B.R. 1018 (Bankr.E.D.Pa.1994), the recent circuit court majority approach to section 546(a)—that the two year limitations period for trustee avoiding powers applies to debtors in possession—has forced lower courts to decide "the effect that the running of that statute would have on a trustee appointed upon conversion of the Chapter 11 case to a case under Chapter 7." *Id.,* at 1020.

This is the precise question posed by defendants Kursman and Jetronic in the instant motions. They argue that the two year limitations period does not run anew upon conversion. Instead, the defendants contend that the chapter 7 trustee only had two years from the date of the chapter 11 order for relief within which he could commence avoidance actions. Specifically, in this bankruptcy case with its conversion and reconversion, the defendants maintain that the two year period commenced on the date this case was converted to chapter 11—March 5, 1992—which is the date of the chapter 11 order for relief.

The circuit courts which have concluded that the section 546(a)(1) two year limitations period applies to a debtor in possession have usually declined to discuss the effect, if any, that conversion would have on the limitations period. *In re Century Brass Products, Inc.,* 22 F.3d 37, 41 (2d Cir.1994); *In re Coastal Group, Inc.,* 13 F.3d at 86 n. 7; *Zilkha Energy Co. v. Leighton,* 920 F.2d at 1524 n. 11. Based in part upon this silence, a number of courts have held that the limitations period begins anew upon the appointment of a chapter 7 trustee.

Some courts have interpreted section 546(a)(1) as evincing congressional intent to have the two year limitations period begin anew whenever a chapter 7 trustee has been appointed, without regard to the existence of any prior trustees under any other chapters, and without regard to the time spent as a

---

**10.** Similar conclusions were reached in *In re Century Brass Products, Inc.,* 22 F.3d 37 (2d Cir.1994) and *In re Softwaire Centre Int'l, Inc.,* 994 F.2d 682 (9th Cir.1993).

debtor in possession. *E.g., In re M & L Business Mach. Co., Inc.,* 171 B.R. 383 (D.Colo.1994); *In re Wood,* 113 B.R. 253 (S.D.Miss.1990). These decisions are based upon the perceived ambiguity of the statutory language and the difference in duties between a chapter 7 trustee and a debtor in possession or any other statutory trustee. In the view of these courts, the policy of allowing a chapter 7 trustee a full two year period in which to liquidate the estate, and commence avoidance litigation, is preeminent. *Accord In re M & L Business Mach. Co., Inc.,* 171 B.R. at 386.

Other courts have construed section 546(a)(1) differently. They interpret this subsection as permitting the two year limitations period to begin running anew upon the appointment of the first statutory trustee following a debtor in possession. *E.g., McCuskey v. Central Trailer Servs.,* 37 F.3d 1329 (8th Cir.1994); *In re San Joaquin Roast Beef,* 7 F.3d 1413 (9th Cir.1993); *In re Ted A. Petrus Furs, Inc.,* 172 B.R. 170 (Bankr.E.D.N.Y.1994); *In re Nelson Co., Inc.; In re Luria Steel Trading Corp.,* 164 B.R. 293 (Bankr.N.D.Ill.1994); *see also In re MortgageAmerica Corp.,* 831 F.2d 97 (5th Cir.1987). Thus, if a chapter 7 trustee follows a debtor in possession, the trustee has two years to commence avoidance actions. But if there had been a chapter 11 trustee appointed, the two year limitations period is not affected by conversion. *In re San Joaquin Roast Beef.*

This latter approach is arrived at by an examination of the language of section 546(a)(1), *see In re Brook Meade Health Care Center, Inc.,* 165 B.R. 195, 197 (Bankr. M.D.Tenn.1994) ("nothing in the language of § 546(a)(1) suggests that the limitation on a debtor in possession would be "tacked" or "added" to calculate the limitation with respect to a subsequently appointed trustee"), along with a balance of two competing principles: the need to preclude litigation of stale claims against the unique function of a chap-

ter 7 trustee. *See, e.g., In re Appliance Store, Inc.; In re Nelson Co., Inc.*

Under either of these two interpretations, the avoidance claims raised by the trustee in the two instant proceedings would be timely. However, one court has utilized a third approach, which is the one advocated by these defendants.[11] In *In re EPI Products, U.S.A., Inc.,* 162 B.R. 1 (Bankr.C.D.Cal.1993) the bankruptcy court held that once a chapter 11 debtor in possession is established, the limitations period of section 546(a)(1) begins and does not run anew with the appointment of any trustee, including one under chapter 7. *Accord In re Sahuaro Petroleum & Asphalt Co.* Although this interpretation is a minority position, this conclusion best follows from the premise of *In re Coastal Group, Inc.* and, thus, I find the most persuasive.

### C.

As noted earlier, section 546(a)(1) makes no mention of a debtor in possession. Further, it has been recognized by most courts that the limitations period of section 546(a)(1) does not apply to every type of bankruptcy trustee. A chapter 7 interim trustee—who has all of the powers of a trustee—is not governed by this limitations subsection on his avoidance powers. *E.g., In re Maxway Corp.,* 27 F.3d at 984.

Accordingly, when the Third Circuit construed section 546(a)(1) as applicable to debtors in possession, it did so by treating such debtors as the equivalent of a trustee specifically identified in subsection 546(a)(1), not as the equivalent of an "interim" trustee. *Compare In re Maxway Corp.* (analogizing a chapter 11 debtor in possession to an interim trustee).

But, obviously, a chapter 11 debtor in possession has quite different duties and responsibilities from a standing chapter 13 trustee (§ 1302) or standing chapter 12 trustee (§ 1202). It also has far different duties from a permanent chapter 7 trustee (§ 702),

---

**11.** Defendants contend that Chief Bankruptcy Judge Scholl also reached this conclusion in *In re Calvanese,* 169 B.R. 104 (Bankr.E.D.Pa.1994). Upon a review of that decision, it is apparent that Judge Scholl only held that a chapter 11 debtor may not extend that two year limitations period by the terms of a proposed chapter 11 plan. *Id.,* at 113–14. *But see In re AOV Industries, Inc.,* 62 B.R. 968 (Bankr.D.D.C.1986) (postconfirmation disbursing agent would have two years from his appointment to commence avoidance actions).

whose primary role is the prompt liquidation and distribution of all assets of the estate. 11 U.S.C. § 704(1); *accord In re Riverside–Linden Inv. Co.,* 925 F.2d 320, 322 (9th Cir. 1991) (trustee's "main" duty is to expeditiously liquidate assets and close the estate); *In re Wilson,* 4 B.R. 605, 606 (Bankr.E.D.Wash. 1980); *see also In re Hyman,* 967 F.2d 1316, 1320 (9th Cir.1992) (section 704(1) requires the trustee to reduce "estate property to cash").

Those circuit courts which have determined that the limitations period on avoidance actions applies to debtors in possession have essentially viewed these debtors as equivalent to chapter 11 trustees appointed under section 1104:

> We do not believe that Congress intended to limit actions filed by an appointed trustee to two years without making the same restriction apply to a debtor in possession who is the functional equivalent of an appointed trustee. Because of the virtual identity of function between a trustee and a debtor in possession, there would be no reason to create a different limitations period for the filing of actions by the two fiduciaries.

*Zilkha Energy Co. v. Leighton,* 920 F.2d at 1524.

Although not expressly stated, the equivalence referred to must be to the duties and powers of a statutory chapter 11 trustee. Indeed, such an equivalence is supported by the legislative history of the Code. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 404 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 116 (1978) 1978 U.S.Code Cong. & Admin.News 5902, 6360:

> This section [§ 1107] places a debtor in possession in the shoes of a trustee in every way. *The debtor is given the rights and powers of a chapter 11 trustee. He is required to perform the functions and duties of a chapter 11 trustee* (except investigative duties). He is also subject to any limitations on a chapter 11 trustee, and to such other limitations and conditions as the court prescribes.

(emphasis added). This legislative history was expressly noted in *In re Coastal Group, Inc.,* 13 F.3d at 84.

If one accepts that, for purposes of section 546(a)(1), a chapter 11 debtor in possession is the equivalent of a chapter 11 trustee, then the conclusion that the two year limitations period begins to run anew upon the appointment of the first statutory trustee becomes problematic. Once a statutory chapter 11 trustee is appointed, the appointment of a successor trustee, either in chapter 11 or chapter 7, should not restart the limitations period. *See In re San Joaquin Roast Beef; In re Ollada,* 114 B.R. 654 (Bankr.E.D.Mo. 1990); *In re Sandra Cotton, Inc.,* 92 B.R. 595 (Bankr.W.D.N.Y.1988); *In re Missouri River Sand & Gravel, Inc.,* 88 B.R. 1006 (Bankr. D.N.D.1988).

Equally unpersuasive to me is the premise that Congress intended that an initial permanent chapter 7 trustee always have at least two years to commence avoidance actions upon conversion, irrespective of the appointment of any prior statutory trustees in chapter 11, or the length of time the bankruptcy case had been pending in chapter 11. Those courts of appeals which have construed section 546(a)(1) as applicable to debtors in possession have recognized the ability of those debtors to initiate avoidance actions, or for creditors to pressure them to do so.[12] Given this ability, these appellate decisions have construed congressional intent to favor the related policies of preventing litigation of stale claims, *see, e.g., In re San Joaquin Roast Beef,* and of disclosing to creditors "early on . . . the potential for recovery of

---

**12.** Indeed, by virtue of 11 U.S.C. §§ 1103(c)(5), 1109(b), courts have permitted official creditors' committees to commence litigation on behalf of chapter 11 debtors in possession in certain appropriate circumstances. *Accord, e.g., Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351, 1363 (5th Cir.1986); *In re STN Enterprises,* 779 F.2d 901, 904 (2nd Cir.1985); *In re Aluminum Mills Corp.,* 132 B.R. 869, 884–85 (Bankr.N.D.Ill.1991); *In re Philadelphia Light Supply Co.,* 39 B.R. 51 (Bankr.E.D.Pa.1984); *In re Jones,* 37 B.R. 969, 973–74 (Bankr.N.D.Tex. 1984) (citing *Gochenour v. George and Francis Ball Foundation,* 35 F.Supp. 508 (S.D.Ind.1940), *aff'd,* 117 F.2d 259 (7th Cir.), *cert. denied,* 313 U.S. 566, 61 S.Ct. 942, 85 L.Ed. 1525 (1941)); *In re Monsour Medical Center,* 5 B.R. 715 (Bankr. W.D.Pa.1980); L. King, 5 *Collier on Bankruptcy,* ¶ 1103.08 (15th ed. 1994).

assets for the estate." *In re Coastal Group, Inc.*, 13 F.3d at 86. Such congressional policy choices are inconsistent with granting a chapter 7 trustee two years to investigate and commence avoidance actions whenever a chapter 11 case is converted.

Accordingly, I agree with the conclusion reached in *In re EPI Products USA, Inc.* The analysis of pre-amended section 546(a)(1) found in *In re Coastal Group, Inc.* and other circuit court opinions—that Congress intended the two year limitations period to commence with the existence of a chapter 11 debtor in possession—convinces me that Congress also intended that this limitations period not begin anew upon conversion to chapter 7. *See also In re CVA Associates*, 171 B.R. 122 (D.Utah 1994) (section 546(a)(1) limitations period began with the election of the first permanent chapter trustee· 7, despite the conversion of the case to chapter 11 and then later back to chapter 7).

### D.

Indeed, the recent enactment of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, most likely supports this result.

Section 216 of this statute amends section 546(a) so that it now states:

(a) An action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of—

(1) the later of—

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

Therefore, as section 546(a)(1) now reads, the two year limitation on the trustee's avoiding powers commences with the entry of the order for relief, not the appointment of a trustee (just like section 108(a)). Clearly,

then, the limitations period applies to debtors in possession. In addition, upon the election or appointment of the first statutory trustee (such as upon conversion to chapter 7 from chapter 11), the limitations period may run anew for up to one year, so long as the first statutory trustee was appointed or elected prior to the expiration of the two year period.

While this current version of section 546(a) does not govern this dispute,[13] one principle of statutory construction holds that "[w]here a former statute is amended, or a doubtful meaning clarified by subsequent legislation ... such amendment or subsequent legislation is strong evidence of the legislative intent of the first statute." Singer, 2B *Southerland Stat. Const.*, § 49.11 (5th ed. 1992). *Accord, e.g., Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 380–81, 89 S.Ct. 1794, 1801–02, 23 L.Ed.2d 371 (1969); *Federal Housing Administration v. Darlington, Inc.*, 358 U.S. 84, 90, 79 S.Ct. 141, 145–46, 3 L.Ed.2d 132 (1958). Of course, the subsequent legislation may be intended to alter a prior statute rather than clarify its meaning. Singer, 2B *Southerland Stat. Const.*, § 49.11 (5th ed. 1992). As explained by the Third Circuit Court of Appeals:

Although it is well established that subsequent legislation reflecting Congress' 'interpretation' of an earlier act is entitled to substantial weight in determining the meaning of an earlier statute ..., the question here is whether the amendment in question is to be considered a 'clarification' or a 'change'.... Numerous cases suggest that where, as here, there is an ambiguous statute or a 'dispute or ambiguity, such as a split in the circuits, [this is] an indication that a subsequent amendment is intended to clarify, rather than change, the existing law.' *Brown v. Marquette Savings & Loan Association*, 686 F.2d 608, 615 (7th Cir.1982) (citing 2A C. Sands, Sutherland Statutory Construction § 49.11, at 265–66 (4th ed. 1973)); *cf. Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). This issue cannot be taken as settled, how-

---

**13.** As noted *supra*, this amendment is prospective in effect and so applies only to those bankruptcy cases commenced after the date of enactment, October 22, 1994. Section 702, Pub.L.No. 103–394. Thus, it does not apply to the instant proceedings.

ever, for '[a] number of cases ... have taken the contrary position, and hold that where an act is amended ... so that doubtful meaning is resolved such action constitutes evidence that the previous statute meant the exact contrary.' 2A *Sutherland Statutory Construction,* supra, § 49.11, at 265.

*Barnes v. Cohen,* 749 F.2d 1009, 1015 (3d Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985).

Clearly, section 546(a)(1) was amended by Congress against the backdrop of recent and numerous court decisions which differ over that section's proper interpretation. As such, I believe the amendment has provisions which were intended to both clarify and alter prior congressional intent.

The amendment clarifies, by the use of the phrase "appointment or such election," that the limitations period only applies in chapter 7 cases to the permanent, elected section 702 chapter 7 trustee. It also clarifies its applicability to debtors in possession, and with it, the possibility that the limitations period could expire and not be renewed upon the appointment of a statutory trustee. New section 546(a)(1) changes prior law by providing a limited renewal of the limitations period in certain circumstances. But decisions which opined that Congress could never have intended in section 546(a)(1) to deprive a chapter 7 statutory trustee of the use of his avoidance powers, *see, e.g., In re Appliance Store, Inc.,* 171 B.R. at 525, apparently have misconstrued, to some degree, congressional intent.

## V.

My conclusion that the limitations provisions of section 546(a)(1), as relevant to these proceedings, do not revive upon the conversion of a chapter 11 case to chapter 7 does not fully resolve this aspect of defendants' motion to dismiss. Just as the limitations period found in section 108(a)(1) may be tolled for equitable reasons, so may the limitations period established by section 546(a)(1). *Accord White v. Boston,* 104 B.R. 951 (S.D.Ind.1989).

As early as 1875, tolling principles have been incorporated into bankruptcy limitations statutes. *Bailey v. Glover,* 88 U.S. 342, 349–50, 22 L.Ed. 636 (1874). As later explained by the Court:

> And so this Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' *Bailey v. Glover....*
>
> *This equitable doctrine is read into every federal statute of limitations.*

*Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (emphasis added); *accord, e.g., Saylor v. Lindsley,* 302 F.Supp. at 1183.

The incorporation of federal common law tolling principles in federal statutes of limitations, which may have begun with bankruptcy limitations law, has included the doctrines of "fraudulent concealment," "the discovery rule," and "equitable tolling." *See, e.g., Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380 (3d Cir.1994). The tolling doctrine of "adverse domination" has been described "as merely a corollary of ... [the] discovery rule, applied in a corporate context." *Resolution Trust Corp. v. Farmer,* 865 F.Supp. at 1154 n. 11 (citing *In re Lloyd Securities,* 153 B.R. at 685). This doctrine has also been applied to federal statutes. *Accord Saylor v. Lindsley,* 302 F.Supp. at 1184 ("It is an accepted federal equitable doctrine that the running of a statute of limitations may be suspended during a period of adverse domination of the injured corporation by the wrongdoers"); *see International Railways of Cent. Am. v. United Fruit Co.,* 373 F.2d 408 (2d Cir.), *cert. denied,* 387 U.S. 921, 87 S.Ct. 2035, 18 L.Ed.2d 975 (1967) (discussing the tolling of a federal antitrust action); *see also Askanase v. Fatjo,* 828 F.Supp. 465, 471 (S.D.Tex.1993) ("The adverse domination tolling theory is recognized by the courts of Texas and has been held to be part of the federal common law"); *In*

re Clinton Centrifuge, Inc., 81 B.R. 844, 848 (Bankr.E.D.Pa.1988).

█ Accordingly, while former section 546(a)(1), as interpreted by the Third Circuit Court of Appeals, triggered a two year limitations period once the instant bankruptcy case was converted to chapter 11, it is possible, given the relationship between the corporate debtor and these two defendants, that this limitations period could have been tolled until the conversion of this case to chapter 7. See In re United Insurance Mgmt., Inc., 14 F.3d 1380, 1384–85 (9th Cir.1994) (§ 546(a)(1) "subject to equitable tolling in proper circumstances," citing Holmberg v. Armbrecht, 327 U.S. at 397, 66 S.Ct. at 585).[14] The federal common law tolling doctrines apply to all federal limitations statutes, including those found in the Bankruptcy Code. See, e.g., In re Olsen, 36 F.3d 71, 73 (9th Cir.1994) (11 U.S.C. § 549(d) may be equitably tolled); White v. Boston, 104 B.R. at 955–57; In re Bingham Systems, Inc., 139 B.R. 809, 813–814 (Bankr.N.D.Miss.1991); In re Candor Diamond Corp., 76 B.R. 342, 350 (Bankr. S.D.N.Y.1987); In re Butcher, 72 B.R. 247 (Bankr.E.D.Tenn.1987).

█ Whether tolling principles such as "adverse domination" apply is a question of fact determined on a case-by-case basis.[15] See White v. Boston, 104 B.R. at 958. Moreover, the degree of control required to trigger this tolling principle has been debated. Resolution Trust Corp. v. Farmer, 865 F.Supp. at 1156–57 (discussing two different evidentiary standards). Regardless of the

appropriate standard to apply, and without intimating that the defendants "adversely dominated" this debtor during the chapter 11 aspect of this bankruptcy case, clearly this issue cannot be resolved in these proceedings in the context of the present motions to dismiss. See Saylor v. Lindsley, 302 F.Supp. at 1185; In re Butcher, 72 B.R. at 251.

Thus, as with the limitations issue under section 108(a), I must defer a resolution to this question.

## VI.

In conclusion, the defendants' motion to dismiss must be denied. The trustee's complaints, though sparse, contain detail sufficient to satisfy Fed.R.Bankr. 7008 and 7009; they also state causes of action upon which relief might be granted. And the issues surrounding the timeliness of certain of the trustee's claims cannot be determined on the basis of a motion to dismiss.

Appropriate orders shall be entered.

## ORDER

AND NOW, this 5th day of December 1994, for the reasons stated in the accompanying memorandum, it is. hereby ordered that defendants' motion to dismiss or, alternatively, for a more definite statement, is denied, except as to count VI, which is dismissed. The plaintiff may amend his complaint within fifteen days from the date of this order to allege facts which would place the defendants on notice that he seeks puni-

---

14. The legislative history to the new version of section 546(a) also supports this conclusion.

This section defines the applicable statute of limitations as 2 years from the entry of an order of relief or 1 year after the appointment of the first trustee if such appointment occurs before the expiration of the original 2–year period. The section is not intended to affect the validity of any tolling agreement or to have any bearing on the equitable tolling doctrine where there has been fraud determined to have occurred.
140 Cong.Rec.H. 10752, * H10768 (daily ed. Oct. 4, 1994).

15. Decisions which hold that a permanent chapter 7 trustee always obtains a full two year period to commence avoidance actions upon conversion of a bankruptcy case are implicitly assuming, in

effect, that the limitations period in section 546(a)(1) should always be tolled in favor of the chapter 7 trustee. See also In re Iron-Oak Supply Corp., 162 B.R. 301, 307 (Bankr.E.D.Cal. 1993) (en banc) ("the legislative scheme of the avoiding powers that plainly seeks to maximize the value of the bankruptcy estate would warrant equitable tolling for the period that the debtor is in control of the estate by virtue of its status as debtor in possession") (dictum).

I find this assumption unpersuasive. The application of federal common law tolling doctrines should only be applied in limited circumstances, as the facts warrant. In some instances, it will be appropriate to conclude that the avoidance action should have been initiated while the debtor was in chapter 11, thereby precluding the chapter 7 trustee from acting beyond the two year limitations period.

tive damages as additional relief in some or all of the claims asserted.